ALEXANDER G. CALFO (SBN 152891)
*ACalfo@yukelaw.com*
KELLEY S. OLAH (SBN 245180)
*KOlah@yukelaw.com*
GABRIELLE ANDERSON-THOMPSON (SBN 247039)
*ganderson-thompson@yukelaw.com*
YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, CA 90071-1560
Telephone: (213) 362-7777
Facsimile: (213) 362-7788

Attorneys for Defendants
JOHNSON & JOHNSON, JANSSEN RESEARCH & DEVELOPMENT, LLC (formerly known as Johnson & Johnson Pharmaceutical Research & Development, LLC), and JANSSEN PHARMACEUTICALS, INC. (formerly known as and Ortho-McNeil Pharmaceutical, Inc.)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

CLEO FLAUTA, STEVE COBBLE, AL NOROOZ, DANIEL STREEPICE, FRANK DICKERSON, JACQUELINE ENGLE, LAWRENCE ST: CIN; DEBORAH HILDEBRANDT, DIANNA MOORE, KENNETH MOORE, JANYA SAMPLE, BILLY JOE SUTTON, PAMELA DENNISON, DARRELL GRIGGS, SUSAN PRICE, RACHAEL SPEIR, ROSETTA COLEMAN, YOLANDA ALVARADO, DAVID ANDERSON, MICHAEL ANDERSON, JOHNETTA ATEMAN, LONNIE BANDY, CHARLEY BARRON, DANNY BESS, WANDA BLUCHER., GARY BOYD, LINDA BRADBERRY, PATTI BRISTER, RALPH BURTS, CAROLYN CALLAHAN, SANDRA' CAPRARO, ANNIE CARTER, MELODY CRESSLER, ROGER DAMNITZ, BERNITA DARLING, LINDA DAVIS, LARRY DAWSONJENNWER FURLS, DAISEY FORD, BARBARA FREY CARLOS GARCIA, JANICE GLACKIN, CHRISTINE GREGORY,

CASE NO. CV12-9095-PSG (AGRx)

**DEFENDANT JOHNSON & JOHNSON'S ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES**

JURY TRIAL DEMANDED

BARBARA HAMILTON, BERNADINE HAMILTON, MARY HANDELAND, ROBERT HANRAHAN, ROBERT HERSHFELT, CLAUDINE HILL-AYIND, VICTORIA. JOHNSON, SIMONE LAGESSIE, NANCY LATINOVICH, VICTOR LAWSON, GARLETTE LEWIS-SEIFER, KELLI LONGACRE, ALPHONSO LYONS, SANDRA MARTIN-CLAYTON, DANIEL MCCARTNER, GEORGIA MCCUAN, CHRISSIE MCINTOSH, SHIRLEY MCNER, PEGGY MELLEIN, ARTHUR MILLER, RUSTY MILLER, MAUREEN MITCHELL, RONALD MOORE, THOMAS MOSTETER, CLIVE NORTON, LINDA O'BANION, EDWIN PAGAN, VELMA PEDEN, KATHLEEN PHILLIPS, LAURINDA PYE, TIFFANY RAY, LORETTA RICHARDSON, NETTIE ROBEY, SHEIREE ROCQUEMORE, JAMES ROONEY, BESSIE ROSSIANO, EDWARD SARNEY, JAMES SAWYER, ROBERT SMITH, MICHAEL ADAMS, MAGALENE BAILEY, DENNIS BARKWAY, MARILYN BRADFORD, KAREN BRADLEY, NEIL BRONSTEIN, JAMES JESSE BRROKS, ANNIE BROWN, JAMES BRUGETTE, MELISSA CAMPBELL, ALFRED CARNAHAN, JANET LYNN CRAWFORD, MARTHA JANE CUSTER, LOIS DWYER, STEVEN FARROW, RICKY FOXWORTH, JOANN GEER, SHIRLEY GOLDSTEIN, SHARON HAMILTON, KAREN HARVERY, ROBERT HASTINGS, ALICIA HERNANDEZ, PHIL HINSON, LOIS HOWARD, CAROL HOWARD-LEASURE, WILEY JAMES, MYRON JORDAN, FRANCES KAPLAN, WILLIAM KRAMER, LUCILLE LAWHON, EDWIN LAWTON, MICHAEL LEAGUE, LINDA LEFFEW, BRENDA LEGE, MICHELE LOGAN, BERNARD MAHAN, SHERI MALAR, SHIRLEY ANN MAUNEY, LISA MITCHELL, ROSA IRENE MOOR, KALMAN PARKER, JOHNNY REED, DANNY ROBERTS,

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

IRENE RODRIGUEZ, FAITH SCHROEDER, MICHELLE SMITH, WILSON SPURLIN, BOBIE ST. CHRISTOPHER, NANCY STAFFORD, BEVERLY STEPHENS, VIRGIL TAYLOR, LORETTA TEALER, MARCENIA THOMAS, JAMES ULIK, BILLY WALKER, NANCY WARE, KAREN WELLS, KAREN YOUNG, BEVERLY ZECH, LESTER APPELL, FANNIE BAKER, MADELYNE BERRY-DAHM, GREG BIRKLAND, ALICE BREWER, RALPH BROWN, EDWARD CHAIT, LARRY COLEMAN, RALPH CONSTANTINEAU, PAUL DAUSMAN, DEBBIE DIBIANCE, LYNN ERKMANN, CLARA GARCIA, EVON GARRETT, CRISTEN CIANNESCHI, DAN HARRIS, JEANNETTE HART, JENNIFER HOCHBERG, NORMA HOUSER, TARENCE JENKINS, CRYSTAL KEMPFER, LINDA KUHN, JERRY LONG, SYLVIA LOVE, DAVID MAAS, CELINE MARSHALL, MARC MCNEESE, VERNA MCNEIL, HELEN MILLER, BERNARD MOLLOY, STEPHEN MONTALBANO, GREGORY MORRIS, KIMBERLY MOSS, THERODORA MURRELL, NASSIR MATTHEW REHAND, MILDRED ROBINSON, ARNOLD SHARKAN, PAMELA SHEPPARD, JOHN SIMON, HENRY SMITH JR., VERNA SMITH, THOMAS STUKINS, DARRELL SULLIVAN GWENDOLYN SYKES, MICHAEL TEAGUE, MARY JANE THOMPSON, YOLANDA TORRES, SANDRA. WARREN, KAREN WATSON, NORMA WEBB, MARGARET WEINAND, JENNIFER WHITE, CARRIE WILLIAMS, KAREN WILLIAMS, SAMUEL WILSON, VERNON WINZELER, TIMOTHY WOLFE, DEBRA WOLINSKY, VELMA WYMAN, BELINDA YOUNG, DIANA ALLEN, DAVE ARNOLD, ROGER BALES, LARA BATIE, TAMMY BAUER, SHIRLEY BENDER, STEPHEN MICHAEL BENSON, TIMOTHY BRAZEAL, KELLY BURNETTE, TERESA

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

CASHEN, ANDREA CHAVEZ-OCHOA, CANDACE CLOWARD-DOUGLAS, RACHEL COLOMBO, MARY COSTA, THERESA DESOTO, NIKOLAI DEZMURA, MATILDE DIAZ-SILVA, MALCOME ENGER, HENRY ESTRADA, BRIAN FILSINGER, KATIA FLEURY, RONNIE GARCIA, JOHN GARZA, CHARLOTTE GRAVITO, CAROL HASTINGS, ROBERT HERNANDEZ, LISA HOFFMAN, MONICA HOLLAND, LAVERNE HOUSE, KATHRYN INGRAM, ANN MARIE JONES, LOIS JOHNSON, HITHAYARANI KANDAVELU, FOTINA KATSOUDAS, HOAWRD KRINICK, NINA LAWSON, JAMES LESLIE, SANDRA MAHMOODI, JEAN MCCORMICK, ROBERT MICHEL, PAMELA MOQUIN, TRACY LYNN MURAD, WALTER OSBOURN III, BONNIE PARKER, ELLIS PENDERGRAFT, STEPHEN PROCK, DEBRA O'SHA.NE, JUDIE ANN QUIJANO, GORDON ROBERTS, ALEXANDRIA ROSES, LAWRENCE SCHNEIDER, RUBY STOLZE, DEBORAH THOMAS, ARVID TOMILLA, NOELLE GARDNER VAHDAT, MICHAEL WOOLMAN, WILLIAM BEAVER, FRANZE BEISERT, SUSAN BETHEL, RHONDA BRALLEY, LLOYD BRYANT, GARY BUHROW, MELANIE CAMPBELL, KIRK CARTER, ROGER CLARK, SHIRLEY CREELEY, YVONNE DAY, MOZIZ DEWALT, BERNADETTE DODSON, MICHAEL DOLYNUIK, PAUL DUMPSON, VAUGHN EDWARDS, JEFFEREY FAIRBAIRN, MARY FLOYD, LUCILLE FORD-BAILEY, RACHEL (MARIA) FREEMAN, VITA FULLER, CURTIS GEE, KATIE GERARD, KRISTI GUTKNECHT, .PAULA HALES, PAUL HARRIS, DOROTHY HARRIS, ROGER HIGGINS, TONY HOWELL, PATRICIA JOHNSON, RICHARD JOY, SUSHILA KHANNA, CYNDI KLINE, GILBERT LENNETT, LORI LINCOLN, FRANCES LUCAKS, PHILLIP MALLORY,. LISA MASKEVICH, KELLY MCANDREW,

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

VERONICA MILLER, GERALDINE MOONEY, WILLIAM MURRELL, JENNIFER NASELARIS, ALICE FAYE NEWSOME, ARTHUR O'HARE, JOZALYN PALMER, LINDA PHILLIPS, NATAN ROZENFELD, ROBERT . SCHMITZ, GLORIA SCHWARTZ, MICHAEL SILVERMAN, SANDRA SMITH, JUDY STEPHENSON, RITA STONE, STEPHEN SWENSON, TERESA THOMPSON, RICK TRIPLETT, LAURA WEST, SANDRA WILKINS, CINDY WISMER, LEATRIS WOMACK JR., GARY YOUNG, WILLIAM AMMERMAN, BETTY ANDERSON, LEONARD ASHLEY, DAVID BRANSON, JACQUELINE BROUGHTON-RUCKER, LINDA BROWNING, VIRGINIA BYERS, CYNTHIA BYRD, JERRY CARTER, ALAN CASWELL, JOSEPH CONVERY, CYNTHIA COOPER, FRANK COSCO, NANCY CRAWFORD, J.W. DEBOARD, IRENE DESANTIS, LEO DESTEFANO, JAMES DUNN SR., GLORIA ESCOE, ROBERT FREEMAN, FREDERICK HAMMERSCHMIDT, SUSAN HANSON, DUSTIN HEITZ, TERRY HEMBY, JAN HILSON, MARY HUBBARD, CAROL HYATT, VIRGINIA JACKSON, VICTORIA JENNINGS, EVELYN JONES, SANDRA JUDD, CYNTHIA KIDD-STEWART, WANDA SUE KINCAID, JOHN JAMES KINNEY, NEVIN KIRK, HAROLD KRAVITZ, LEANN KURTZ, CARLOS LOPEZ, MARTHA LORD, BRODY LOZO, JANIS LUTKE, SUSAN MAGOON-PETIT, HOPE MALN ATI, DEBORAH MASON, JULIAN MCCAMY, DAVID MEADE, PATRICIA MEANY, JEAN ANN MILLER, SCOTT MILLER, ANNA MOCCALDI, HELEN MYERS, PATRICIA NEARY, PAMELA NELSON, ALICE NORRIS, ANA PEREIRA, TARA REYES, FRANK RIDLON, LUIS RODRIGUEZ, MILES SMASH, TIFFANY SPEARS, ROMMIE STALNAKER, SHARON STEORT, MARY JANE TAGLIERI, WILLIE TOMPKINS, MICHAEL

VIEIRA, ANNIE MAUDE WAGNER, KATHLEEN WALLS, JOANN WILCHER, LORETTA WILHELM, RICHARD WOODS, MICHAEL ABRAHAM, DIANNE ANDIS, CYNTHIA ANDREWS, JANACE BAILEY, NORMA BROOKS, LOIS BURGESS, TAMMY BURNETT, GILBERT CARRASCO, JOAN GASELLI-GROSS, CAROL LEE CHAPPELL, JOSEPH CLARK, LINDA CONOVALOFF, SUSAN WINIFRED DAVIS, JAMES DECKER, RONALD DELCAMP, ROBELIN DELEON, JR., WAYNE PAUL DONALDSON, NANCY EDWARDS, DONNA ERWIN, ELLEN FINLEY, AMNITA FLORES, GARY FOSTER, FREDERICK FREEH, ERNESTO FUSARELLI, ANNETTE GALVAN, GLORIA HAMILTON, MARLISSA HENDRIX, PAUL HILF, TAMECA JENKINS, KAREN JONES, LISA KLAPPENBACK, HERMAN KLINE, BARTON LACHAPPELLE, LINDA LAWLER, CYNTHIA LINDLEY, MICHAEL MALLICOAT, ISABEL MARTINEZ, RAUL MARTINEZ, VAROLYN MCGEE, CYNTHIA MENDEZ, TAWNYA MITCHELL, NICOLE MOORE, MICHAEL MURPHY, ALICE NASH, BAKULA PATEL, DUANE PATTERSON, CARL PAYTON, JEANETTE PESSOLANO, STEVEN PEZZINO, JOAN PICARONE, SHARON PICKARD, THERESA PRIMAVERA, JUDY SLATON, CHARLES SMITH, NANCY LOUISE SMITH, BRENDA STUKEY, JIMMIE TERREL, DOUGLAS WILLIAMS, HOLLY WITWORTH, JOSELITO YAMBAO, DONALD ABNER, JANET ALMOND, LUANN AVEN, PATRICIA BACHISN, JANE ANN BAKER, VICKI BLOMMEL, DAVID BOSWELL, LESLIE BROWN, KIMBERLY BURGE, PEGGY SUE BUSH, ALTON CARTER, BARBARA CASEY, ALICIA CUMMINS, DAVID DARST, STELLA LOUISE DEEDS, ANTHONY DEGIDIO, BRIAN DIETZ, GEORGE FESSLER, RHONDA GILKEY-TREVLEN,

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

LEONARD GOLDBERG, DORIS GORDON, JOANNE HALL, CHARLES HOBBS, DENNIS HOLCOMB, DONNA HOUSTON, DARLENE JANIS, RICK KIDWELL, SANDRA LOGAN, HEIDI LOWE, DONNA LUDWIG, SYLVIA MCELHANNON, RICHARD MOSTELLER, JOYCE ROTH, DIANE RUDE, MARY SACCO, MARY JO SAUERS, KERRI SECHMAN, GAYLAND SELBY, WARREN SHARPE, ELLEN SHUMWAY, FANCES SPENCE, CAROL STARBUCK, MELISSA TEDESHI, JACOB THOMPSON, SHIRLEY THOMPSON, MELVIN TIMBERLAKE, ROSEANNA VALENZANO, RICHARD WALDRON, JOHN WILSON, THOMAS YERIAN, JOSALYN BUCHANAN, KIMBERLY CLARK, JON HURLEY, DAVID MEDINA, DONALD MYERS, PATRICIA NEARY, DAVID NEIGHBORS, ANA PEREIRA, TARA REYES, LECIA SEAMAN, LIDA SHAFFER, EMILY SHELTON, RUTH VEGA, CAROL WILCOX, KERRY WILKES, JOY ATKINS, ANGENETTA BAILEY, JERRY BAILEY, ROBERT LEE BALL, BETTY BARKLEY, DEBORAH BENGE, RHONDA BOUDREAUX, CYNTHIA BURGETT, MICHAEL CARROLTHERS, RICKEY COOPER, MAXINE CROUCH, GARRY DAILEY, PEGGY DAVERSA, ROBERT DAVOLT, TOM DIEM, DONNA DUNCAN, SONJA FASSBENDER, REMY FERRER, BONNIE FOSTER, ROBERT GODWIN, KAYE GOODRICH, BARBARA GORDON-ABSTON, ANNIE HANNAH, ROBERT HARKINS, HOWARD HENDERSON, LAWRENCE HILT, MERLIN HULL, LORI JEAN IRWIN, GERALD JONES, EARL KENT, REX LECLERC, SHELIA LEON, MARION LEONARD, DONALD LIVENGOOD, ROXANNE LUCAS, DEBORAH LUCE, THOMAS MALONEY, BRUNA MATTIOLI, THOMAS MCCANT KATHY ANN MCCRORY,

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

ROBYN MOORE, WILLIE NELSON, JACK PENROD, KATHY POWE, DIANNE RANSOM, KENNETH ROBERTS, CHESTINE SCOTT, ANNIE SCHACKELFORD, ARDEN JESS SMITH, WILLIAM SHORT, RICHARD STOVER, CHARLENE TAYLOR, WILLIAM THILMONT, ALETHEA WATSON-AGEE, KRISTY WAYLAND, SARA WELBORN, VIVIAN WERNTZ, LYNNE WETTIG, SELENA WHEELER, FLORENE WHITE-RAYMOND, LAWRENCE WILSON, ELLSWORTH WRIGHT, MARY ANN ANDERSON, CAROL ANDREWS, DESIREE BOLOGNONE, JUNE CONNOR, THOMAS DARK, ANTHONY DEFELICE, CHARLES DENNISON, KAREN FIELDS, JENNY GRAVES, CHRISTINE HAAR, CHARLES HOOD, JENNIFER JARDINE, ARTHUR LEBOFSKY, DIANE LEWANDOWSKI, JACK MCCGINNIS, DANIEL MEINERT, HAROLD OKUN, PEGGY ROSS, CAROLYN STINNETT, DIANA SWENSON, ANTONIO TAYLOR, NORMA THOMPSON, ODESSA UNDERWOOD, BLAIR WEBB, PAULA WELLS, JOSEPH ATKINSON, JOSEPH DEMTY, FANNY DIAZ, DENNIS DICKSON, VIRGINIA DIETRICH, LISA DIXON, LINDA DOMAN, MICHAEL DONOFRIO, BENNY DYE, LOUISE FINELY, SUE FINN, CHARLES FINN III, DIANE FITZGERALD, JERRY FLAKUS, NINA FLEISHER, SHELLY FROMM, MARILYN GOLDBERG, VAN GREENE, VIRGINIA GREGORY, BARBARA HELMINGER, VERONICA HELSBY, JANICE HERRING, RAY HOLMES, DENNIS HORN, GEORGIA IRWIN, GLORIA JACKSON, ALICE JOHNSON, PATRICIA JOHNSON, GERALD KAMINER, LORETTA KAUL, STEVEN KELLY, WANDA KIZER, SHARI KRISBY, MARTIN LALLI, DONNA LAROCHELLE, RICHARD LAROSA SR, LUCILLE LEECH, SUSAN LESOWITZ, THERESA MASUCCI, DORA MATA,

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

BETTY MCKINNIE, WILLIE MCLEAN, JOSEPH MCNALLY, MYRCA MONTREUIL, MARVIN MOORE, JAMES NESTOR, NANCY NIETO, CAROLYN ONDRUSEK, ARELYS PEREZ, CHRISTOPHER PORTER, LEE POWERS, EDWARD PUSKAS, JOHN RATHGEB, CAROLE RAY, CYNTHIA REEDY, THEODORE REGAL, DEBRA ROSENFELD, MARC RUBINSON, EARNEST RUSSELL, HALLEH SABET, LYNNE SACHSE, LEROY SANFORD, MELODY SANSBURY, JEANNETTE SANTORE, NANCY SEIB, NORMAN SELF, ELIZABETH SHEEDY, EMILIE SHRIVER, KRISSY SLAWINSKI, RUTH SLONE, CLIFTON SMITH, ELAINE SNYDER, MICHAEL STOLICA, PRISCILLA SWARTWOOD, FRANK TABINO JR., LONNIE THOMAS, JOSETTE THOMPSON, HOBY UNKELBACH, MARK VALENTE, ROSEMARY VANRIPER, CARROLL WARD, JACQUELINE WHEELER, MARGARET WHITE, GLORIA WHITE, JOHN VINELLI, BRADLEY ADDIS, JOHN ALTMAN, BILLIE KAYE ALEXANDER, STEVEN ALTEMEYER, BELA ANTAL, HARRIET ANTHONY, JESSE ARCHER, PRESTON ARNOLD, VIKKI AVILA, PATSY JOAN BAILEY, SCOTT BALLENGER, HELEN BALTIMORE-MINNER, CAROL BANJO, CHERIE BARDEZBAIN, VINCE BATTAGLIA, JAMES BERNEY, PATRICE BETHEA, MARY BEIS, CAROL BERMAN, MARK BESSEN, BERNARD BINGHAM, TODD BISHOP, TERETHA BONGALIS, CHARLOTTE BOATMAN, JACQUELYN BORMANN, PAUL BRAUNGER, NANCY BREWER, VIRGINIA BULLOCK-GREY, GINA LOUISE BURNS, GUY BURNS, JOHN CALVERT, JUDITH COHEN, STACEY COLLINS, JOHN ARTHUR COUILLARD, HARRY CUSHING, LONNIE DEGG, CONNIE DESILVIS, CHERYL DEWITT, BERNICE DISCIANNO, LINDA DOERR, ANTONION DORSEY, LUELLA

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

EDWARDS, ANITA EVANS, ERNEST FALK, JOSEPH FELLER, TERRY FLETCHER, LARRY FOUNTAIN, JASON LEE FRANKLIN, JAN GARRETT, MARCIA GRACE, ELIZABETH GRAVES, BETTY HARDEN, TERESA HARRIMAN, HENRY HOWES, LOUIS JONES, HELEN KANE, JOHN KRAMER, DEBORAH LARAIA, RAMONA LOWELL, CAROL LUCKOW, ROGER MAY, BRADLEY MCCOY, VIOLET MCGEE, GARY MILLER, MARSCHERE MILER, SHARON MONTGOMERY, JOSEPHINE MOURNING, JUDY MULLINS, GERALDINE NEWBY, EUGENE O'NEILL, ANTHONY PALMIERO, DENNIS PARKER, CAROLYN RICKER, JOE ROMERO, DEWEY RUSS JR., FAITH SCHUPANITZ, KEVIN SCOTT, NEIL SCROGGINS, MARY SLAGLE, CHERYL SMITH, CHARLOTTE SOBER, SUSAN STONE, RODNEY THIELBAR, GLENNY TIEPEL, DEREK TRAPP, NICOLE TUCEK, MARY KAY VISSER, MICHAEL ZIELINSKI, GEORGINA ALVAREZ-GRESPO, MICHAEL ALVERSON SR., DIANE AXELROD, RODGER BAKER, ARTHUR BAPTISTER, JOSE BARRIENTOS, DOROTHY BASARABA, FREDERICK BENNETT, MIKE BENTLEY, JOAN BERMAN, STEPHANIE BILDNER, JEANNETTE BIMONTE, MICHAEL BOARD, APRIL BOLOGNA, CAROLYN BRANSCOMB, SYBIL BRITT, RENDER BRITTON, BEVERLY BROWN, DEBRA JEAN BROWN, KAREN BROWN, ESTHER BROWNE-KING, DARRY BROWN-WAKEFIELD, DANA BROWNWRIGHT, RHONDA FAYE BRYANT, ROBERT BURGIO, BRADEN BYRD, RICHARD CADIEUX, SHARON CAMPBELL, DANNY CARNELL, THEMLA CARTER, SAPHINA CASEY, JOSE CASTELLANOS, MYRON CHESTNUT, HENRY CLAUSON, DIANNE CLAWSON, JASON COOK, JAMES COONEY, BETTY COOPER,

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

WILLIAM CORDREY, ELAINE COUTURE, JUANITA COVINGTON-BROWN, HOLLY CREEL, JULIAN CROSS, MARTIN CROWE, DENNIS CUNNINGHAM, GWENDOLYN CUNNINGHAM, RICHARD D'ALESSANDRO, PAULA DEFOREST, WILLIAM DEJARNETTE, PAUL DEMARIA, SHERYL ELLIS-RICHARDSON, ANDREA ESSARY, MAUREEN FLETCHER, JACKIE FLIPPO, LARRY FLOYD, LORA GRAHAM, LIZ HAGGARD, JANIE HATHOOT, CYNTHIA HENNECK, CHARLES HOLMAN, PATRICIA HOWARD, HELEN JONES, TAMARA JONES, LINDA KANIA, VINCENT KELLY, PEDRO LABARTA, ARCHIE LAIL, PATRICIA LANDRY, MARY LAWTON, SAMUEL LUCAS, SHARON MALOFSKY, DAN MCDOWELL, RICHARD MILSAK, LETA MITCHELL, CATHERINE MULLEN, SUZANNE MURPHY, PAM MYERS, KEVIN SCOTT, RENEE SHEPHERD, ALICE SHORE, PATSY SORRELLS, BARBARA STRAUB, KELLY TAYLOR, ROWLAND TRAVIS, JAMES WEILANDT, ROBERT WIERZBICKY, JULIE KAY ADAMS, CARLOS ALVAREX, JAMES ANDERSON, GAYLE BALDWIN, PAUL BARRETTE, LAURA BERRY, CHERYL BITTERS, ROBERT BOSTIC, WERNER BRANDENBURG, TABITHA BRUAH, CAROLYN BUCK, VERNON CAMERON, PAUL CLIFTON JR., JENNIE CLINGEN, REGINA COLLURA, NORMA CONWAY, PATRICIA COOK, REBECCA CRAWFORD, TERRY CRESWELL, RENE DAVIS, CRYSTAL DOW, PATRICK EDNIE, EDGAR AVANS, FRETTA FOEKS, RAMONA FOSHEE, RENAE FURLONG, CLARENCE GARTIN, MARY JANE GAVIN, RYAN GERHARDT, JESSICA GETSFRID, PAUL GIGUERE, VIRGINIA GILMORE, DAVID GORDON, LORETTA GRAVES, JOHN GRAYBILL, EVONNE HAAK, ANN

HAHN, BILLY HARDEE, VARNEY HARMON, STEVEN HARRIS, KEITH HARVEY, DANIEL HOLMAN, WILLIAM HOLLY, TRACY HOOKS, JANET HORSMAN, WILLIAM HUMPHREY, JOYCE ANN HYDE, BRENDA JAEGER, DALLAS JOHNSON, JOUISE JURACKA, SUZANNE KEUPER, RICH KING, LOUANN KOCHER, LARRY KOLLMAR, JOHN MATHEWS, ROBERT MCLENNON, ERIKA MIDKIFF, GLENN CASEY NORDIN JR., JANE OWENBY, TERRY PATTERSON, ANTIONETTE POWERS, ANTONIO PURIFICATO, DAVID REAVIS, ELIZABETH ROBERTSON, JOANN ROS, KATHLEEN ANN RUSSO, ANN SADLER-GODWIN, TERESA SCHANZER, VICKIT ANN SCHMITT, JANICE SCOTTI, REBECCA SCRUGGS, ROBERT SHEFFER, LYNNE SHERLAND-DUPUIS, JAMES SISTARE, PATSY SMITH, RICHARD SMITH, PHYLLIS SONNIER, JAMES SPENCE, WLATER STEWART, JAMES TAYLOR JR, JOYCE TERRY, ROY EUGENE URPMAN, RICKY WAKELAND, RUDOLPH WEINHANDL, EARLEEN WILLIAMS, REBECCA WINCHESTER,

Plaintiffs,

vs.

JOHNSON & JOHNSON, ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, LLC,

Defendants.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Defendant JOHNSON & JOHNSON ("J&J" or "Defendant") for itself and no other defendant responds to the unverified complaint ("Complaint") of Plaintiffs ("Plaintiffs") in the above captioned action as follows:

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWERS TO ALLEGATIONS AND COMPLAINT**

J&J denies each and every allegation, statement, matter and thing contained in Plaintiff's Complaint except as is hereinafter expressly admitted or alleged. J&J Johnson & Johnson specifically denies each and every allegation of facts or omissions as to it as Johnson & Johnson did not develop, test, research, or market Levofloxacin at any time. Plaintiff's Complaint asserts no recognizable cause of action against this Defendant.

**INTRODUCTION**

1. This case involves the fluoroquinolone antibiotic, levofloxacin.

**ANSWER:**

J&J admits the allegations in Paragraph 1.

2. Levofloxacin was designed, formulated, promoted, sold and distributed by Defendants in the United States as Levaquin® from 1997 through the present.

**ANSWER:**

J&J admits that Ortho McNeil Pharmaceutical, Inc. ("OMP") marketed Levofloxacin in the United States until December 31, 2007, when all assets of OMP were transferred to Defendant Janssen Pharmaceuticals, Inc. (formerly known as Ortho-McNeil-Janssen Pharmaceuticals, Inc., and hereinafter referred to as "JPI"), which now markets Levofloxacin in the United States. J&J denies the remaining allegations in Paragraph 2.

3. Levaquin was approved by the FDA for treatment of a variety of serious infections. However, Defendants market Levaquin as a first line therapy for common bronchitis, sinusitis infections, and for other similar minor conditions where many other safer antibiotics are available for treatment.

**ANSWER:**

J&J admits that Levofloxacin was approved by the FDA for its labeled uses. J&J denies the remaining allegations in Paragraph 3.

4. As compared to other fluoroquinolone antibiotic drugs, Levaquin

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

causes a higher incidence of tendon injuries, including tendon rupture, especially in persons over 60 years of age and/or who are on corticosteroid therapy, none of which was adequately disclosed to Plaintiffs and Plaintiffs' physicians.

**ANSWER:**

J&J denies the allegations in Paragraph 4.

5. Levaquin-induced tendon injury involves the degradation of the tendon tissue, leading to severe and permanent injuries.

**ANSWER:**

J&J denies the allegations in Paragraph 5.

6. The Plaintiffs suffered severe and debilitating tendon injuries after use of the drug Levaquin.

**ANSWER:**

J&J denies the allegations in Paragraph 6.

7. This lawsuit asserts claims against the Defendants for strict product liability for manufacturing and/or design defect; strict product liability for failure to warn; negligence; breach of implied and express warranties for the design, manufacture, production, testing, study, inspection, labeling, marketing, advertising, sales, promotion, and distribution of Levaquin; common law fraud and violation of consumer protection laws.

**ANSWER:**

J&J states that there are no allegations to which J&J is required to respond. To the extent a response is required, J&J denies the allegations in Paragraph 7.

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over Defendants because Defendants have transacted business and engaged in tortious and fraudulent conduct, by affirmative act or omission, in the State of California such that it reasonably anticipated being subject to personal jurisdiction before the courts of this State.

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWER:**

J&J admits that this court has jurisdiction over this action as alleged in paragraph 8.

9. Venue is proper in this Court, including under California Civil Code § 1780, because Defendant Ortho-McNeil does business in Los Angeles County, California, and/or has a registered agent in this County. Additionally, Plaintiff resides in Los Angeles County, and a substantial part of the events or omissions giving rise to the claims occurred in Los Angeles County, California.

**ANSWER:**

In response to paragraph 9, J&J states that the allegations contained therein call for a legal conclusion to which no response is necessary, but responding further J&J denies those allegations to the extent they seek to impose obligations on J&J beyond those required by law.

10. The Defendants are subject to the jurisdiction of this Court because they conduct substantial, continuous and systematic business within the state of California. Defendants maintain offices and agents in the state for the transaction of their customary business. In addition, Defendants engage in widespread and continuous sales activities within the state of California.

**ANSWER:**

In response to paragraph 10, J&J states that the allegations contained therein call for a legal conclusion to which no response is necessary, but responding further J&J denies those allegations to the extent they seek to impose obligations on J&J beyond those required by law.

11. The applicable statute of limitations is tolled based on Defendants' fraudulent concealment of the dangers and adverse side effects of Levaquin from Plaintiffs as more fully stated herein, which prevented Plaintiffs from discovering Defendants' wrongdoing. Additionally, for the reasons stated herein, all Defendants are equitably estopped from raising the statute of limitations defense.

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWER:**

J&J states that the allegations in Paragraph 11 state conclusions of law to which no response is required. To the extent that a response is required, J&J denies the allegations in Paragraph 11 and expressly denies that Levaquin is defective in any respect.

**PARTIES**

12. Plaintiffs Yolanda Alvarado, Wanda Boucher, Linda Bradberry, Patti Brister, Annie Brown, Melissa Campbell, Janet Lynne Crawford, Frances Kaplan, William Kramer, Frances Cassola, Edward Chait, Ralph Constantineau, Debbie DiBianca, Stephen Montalbano, Collette Fotiadis, Lisa Hoffman, Laverne House, Ann Marie James, Fotini Katsoudas, Howard Krinick, Gilbert Lenett, Deborah Benge, Charles Hood, Pedro Labarta, Gilbert Lenett, Carlos Lopez, Francis Lukacs, Lisa Maskevich, Joseph McNally, Patricia Meany, Geraldine Mooney, Virgil William Murrell, Stephanie Myers, Patricia Neary, Anthony Palmiero, Ana Pereira, Jeannette Pessolano, Steven Pezzino, Joan Picarone, Warren Sharpe, Ellen Shurnway, Roseanna Valenzano, Ruth Vega, Selena Wheeler, Florene White-Raymond, Melissa Tedeschi, Mary Ann Verde, Pat Patel, Lena Schnetzinger are citizens and residents of New Jersey and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 12.

13. Plaintiffs Kelli Longacre, Steven Altemeyer, Carol Andrew, Harriet

Anthony, Preston Arnold, Vikki Avila, Patsy Joan Bailey, Scott Ballenger, Helen Baltimore-Minner, Carol Banjo, Cherie Bardezbain, Patrice Beathea, Mary Beis, Carol Berman, Mark Bessen, Bernard Bingham, Todd Bishop, Henry Howes, Carolyn McGee, Billie Kaye Alexander are citizens and residents of Missouri and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 13.

14. Plaintiffs Thomas Mosteter, Jerry Bailey, Betty Barkley, Jeannette Bimonte, Maxine Crouch, Peggy Daversa, Sonja Fassbender, Remy Ferrer, Kaye Goodrich, Annie Hannah, Howard Henderson, Jr., Earl Kent, Jr., Mary Lawton, Roxane Lucas, Thomas McCants, Willie Nelson, Kathy Powe, Annie Shackelford, Richard Stover, Alethea Watson-Agee, Kristy Wayland (Bobo), Thomas Dark, Odessa Underwood are citizens and residents of Alabama and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 14.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

15. Plaintiffs Michael Adams, JoAnn Geer, Karen Harvey, Nancy Ware are citizens and residents of Alaska and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 15.

16. Plaintiffs Michael Alverson, Sr., Mary Ann Anderson, Carolyn Branscomb, Dana Brown-Wright, Rhonda Faye Bryant, Braden Byrd, Danny Came1l, Andrea Essary, Jackie Flippo, Larry Floyd, Liz Haggard, Janie Hathoot, Charles Holman, Helen Jones, Vincent Kelly, Archie Lail, Samuel Lucas, Dan Charles McDowell, Richard Milsak, Leta Mitchell, Catherine Mullen, Pam Myers, Renee Shepherd, Barbara Straub, Kelly M. Taylor, Holly Creel, Lora Graham, Patsy Sorrells, Darryl Brown-Wakefield are citizens and residents of Arkansas and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 16.

17. Plaintiffs Dave Arnold, Lara Batie, Tarmny Bauer, Shirley Bender,

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

Teresa Cashen, Rachel. Colombo, Theresa Desoto, Malcolm Enger, Katia Fleury, John Garza, Robert Michel, Bonnie Parker, Ellis Pendergraft, Stephen Prock, Debra O'Shane, Judie Ann Quijano, Alexandria Roses, Lawrence Schneider, Ruby Stolze, Deborah Thomas, Arvid Tommila, Wiliam DeJamette, Patricia Landry, Alice Shore, James Weilandt are citizens and residents of Arizona and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 17.

18. Plaintiffs Bernard Molloy, Diana Allen, Roger Bales, Stephen Michael Benson, Timothy Brazeal, Kelly Burnette, Andrea Chavez-Ochoa, Candace Cloward-Douglass, Mary Costa, Nikolai Dezmura, Matilda Diaz-Silva, Henry Estrada, Brian Filsinger, Cleo Flauta, Ronnie Garcia, Charlotte Garavito, Robert Hernandez, Monica Holland, Kathryn Ingram, Lois Johnson, Hityarani Kandavelu, Nina Lawson, James Leslie, Sandra Mahmoodi, Jean McCormick, Pamela Moquin, Tracy Lynn Murad, Walter Osbourn III, Gordon Roberts, Noelle Gardner-Vandat, Michael Woolman, William Beaver, Franz Beisert, Susan Bethel, Melanie Campbell, Kirk Carter, Yvonne Day, Michael Dolyniuk, Paul Dumpson, Jeffrey Fairbairn, Lucille Ford-Bailey, Rachel (Maria) Freeman, Curtis Gee, Katie Gerard, Steve Cobble, Sheryl Ellis-Richardson, Paul Harris, Rodger Higgins, Tony Howell, Richard Joy, Sr., Cyndi Kline, Phillip Mallory, Kelly McAndrew, Al F. Norooz, Arthur O'Hare, Jozalyn Palmer, Natan Rozenfeld, Robert Schmitz, Gloria Schwartz, Michael Silverman, Sandra Smith, Rommie L. Stalnaker, Daniel Striepeke, Stephen

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

Swenson, Teresa Thompson, Cindy Wismer, Leatris Womack, Jr., Joseph Clark, Jack McGinnis, Gary Young, Judith Cohenare citizens and residents of California and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 18.

19. Plaintiffs Dianne Andis, Lois Burgess, Susan Winifred Davis, Ronald Delcamp, Frederick Freeh, Annette Galvan, Paul Hilf, Herman Kline, Bakula Patel, Kevin Scott, Emily Shelton, Judy Slaton, Nancy Louise Smith are citizens and residents of Colorado and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 19.

20. Plaintiffs Michael Board, Gwendolyn Cunningham, Richard A. D'Alessandro, Maureen Fletcher, Patricia Howard, Linda Kania, Sharon Malofsky, Suzanne Murphy, Rowland Travis, Tamara Jones are citizens and residents of Connecticut and took Levaquin that was manufactured by Defendants. Because of

Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 20.

21. Plaintiffs Henry Smith, Jr., Georgina Alvarez-Grespo, Diane Axelrod, Roger Baker, Arthur Baptister, Jose Barrientos, Dorothy Basaraba, Frederic Bennett, Mike Bentley, Joan. Berman, Stephanie Bildner, April Bologna, Sybil Britt, Render Britton, Beverly Brown, Debra Jean Brown, Karen Brown, Esther Browne-King, Robert Burgio, Richard Cadieux, Thelma Carter, Saphina Casey, Jose Castellanos, Myron Chestnut, Henry E. Clauson, Dianne Clawson, Jason Cook, James Cooney, Betty Cooper, William Cordrey, Elaine Couture, Juanita Covington-Brown, Julian Cross, Martin Crowe, Dennis Cunningham, Paula DeForest, Paul DeMaria, Joseph Demty, Charles Dnnison, Fanny Diaz, Dennis Dickson, Virginia Dietrich, Lisa Dixon, Linda Doman, Michael Donofrio, Benny Dye, Louise Finley, Sue Finn, Charles Finn III, Diane Fitzgerald, Jerry Flakus, Nina Fleisher, Shelley Fromm, Marilyn Goldberg, Van Greene, Virginia Gregory, Susan Hanson, Barbara Helminger, Veronica Helsby, Janice Herring, Ray Holmes, Dennis Horn, George Irwin, Gloria Jackson, Alice Johnson, Patricia Johnson, Jennifer Johnson, Gerald Kaminer, Loretta Kaul, Steven Kelly, Wanda Kizer, Shari L. Krisby, Martin Lalli, Donna LaRochelle, Richard LaRosa, Sr., Lucille Leech, Susan Lesowitz, Theresa Masucci, Dora Mata, Betty McKinnie, Willie McLean, Myrca Montreuil, Maryn Moore, James Nestor, Nancy Nieto, Carolyn Ondrusek, Arelys Perez, Christopher Porter, Lee Powers, Edward Puskas, John Rathgeb, Carole Ray, Charles Ray,

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

Cynthia Reedy, Theodore Regal, Debra A. Rosenfeld, Marc Brad Rubinson, Earnest Russell, Halleh Sabet, Lynne Sachse, Leroy Sanford, Melody Sansbury, Jeannette Santore, Mary Jo Sauers, Nancy Seib, Norman Self, Elizabeth Sheedy, Emilie Shriver, Krissy Slawinski, Ruth Slone, Clifton Smith, Elaine Snyder, Priscilla. Swartwood, Frank Tabino, Jr., Lonnie Thomas, Josette Thompson, Hoby Unkelbach, Mark Valente, Rosemary VanRiper, Annie Maude Wagner, Carroll Ward, Jacqueline Wheeler, Margaret White, Gloria White, Sharon Pickard, John Vinelli, Sharon Campbell, Michael Stolica are citizens and residents of Florida and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 21.

22. Plaintiffs Betty Ammerman, Betty Anderson, Leonard Ashley, David Branson, Jacqueline Broughton-Rucker, Cynthia Byrd, Jerry Carter, Alan Caswell, Cynthia Cooper, J.W. DeBoard, Jr., Gloria Escoe, Robert Freeman, Anna Hammerschmidt, Betty Harden, Dustin Heitz, Jan Hinson, Mary Hubbard, Virginia Jackson, Evelyn Jones, Sandra Judd, Cynthia Kidd-Stewart, Martha Lord, Janis Lutke, Deborah Mason, Julian McCamy, David Meade, Jean Ann Miller, Helen Myers, David Neighbors, Pamela Nelson, Alice Norris, Frank Ridlon, Luis Rodriguez, Miles Smash, Willie Tompkins, Kathleen Walls, Joann Witcher, Desiree Bolognone, Tiffany Spears are citizens and residents of Georgia and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 22.

23. Plaintiffs Paul Braunger, John Arthur Couillard, LeAnn Kurtz, Susan Magoon-Pettit, Scott Miller, Cynthia Schupanitz are citizens and residents of Iowa and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 23.

24. Plaintiffs Vita Fuller, Kristi Gutknecht, Paula Hales are citizens and residents of Idaho and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

denies the remaining allegations in Paragraph 24.

25. Plaintiffs Frank Dickerson, Jacquelyn Engle, Lawrence St. Cin, Deborah Hildebrandt, Diana Moore, Kemleth Moore, Jayna Sample, Billy Joe Sutton, Pamela Demlison, Darrell Griggs, Susan Price, Rachael Speir, Rosetta Coleman, David Anderson, Michael Anderson, Johnetta Atemen, Lonnie Bandy, Charley Barron, Damly Bess, Gary Boyd, Ralph Burts, Carolyn Callahan, Sandra Capraro, Annie Carter, Melody Cressler, Roger Damnitz, Bemita Darling, Linda Davis, Larry Dawson, Jennifer Fliris, Daisy Ford, Barbara Frey, Carlos Garcia, Janice Glackin, Christine Gregory, Barbara Hamilton, Bernadine Hamilton, Mary Handeland, Robert Hanrahan, Robert Hershfelt, Claudine Hill-Ayinde, Victoria Johnson, Simone Lagessie, Nancy Latinovich, Victor Lawson, Garlette Lewis-Seifer, Alphonso Lyons, Daniel McCartney, Georgia McCuan, Chrissie Mcintosh, Shirley McNear, Peggy Mellein, Arthur Miller, Rusty Miller, Maureen Mitchell, Ronald Moore, Clive Norton, Linda O'Banion, Edwin Pagan, Vehna Peden, Kathleen Phillips, Laurinda Pye, Tiffany Ray, Loretta Richardson, Nettie Robey, Sheiree Rocquemore, James Rooney, Bessie Rossiano, Edward Sarney, Jmnes Sawyer, Robert Smith, Lester Appell, Fannie Baker, Madalyne Berry-Dahm, Greg Birkland, Alice Brewer, Ralph Brown, Larry Coleman, Paul Dausman, Lynn Erkmann, Clara Garcia, Evon Garrett, Cristen Giannesehi, Dan Harris, Jeanette Hart, Jennifer Hochberg, Nonna Houser, Tarence Jenkins, Crystal Kempfer, Linda Kuhn, Jerry Long, Sylvia Love, David Maas, Celine Marshall, Marc McNeese, Verna McNeil, Helen Miller, Gregory Morris, Kimberly Moss, Therodora Murrell, Nassir Matthew Rehan, Mildred Robinson, Arnold Sharkan, John Simon, Verna Smith, Thomas Stukins, Darrell Sullivan, Gwendolyn Sykes, Michael Teague, Mary Jane Thompson, Yolanda Torres, Sandra Warren, Karen Watson, Norma Webb, Margaret Weinand, Jennifer White, Carrie Williams, Karen Williams, Samuel Wilson, Vernon Winzeler, Timothy Wolfe, Debra Wolinsky, Velma Wyman, Belinda Young, Rickey Wakeland, Michael Murphy are citizens and residents of

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Illinois and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 25.

26. Plaintiffs Pamela Sheppard, Joy Atkins, Rickey Cooper, Garry Dailey, Tom Diem, Donna Duncan, Robert Godwin, Jenny Graves, Teresa Harriman, Gerald Jones, Rex LeClerc, Thomas Maloney, Kathy Ann McCrory, Sharon Montgomery, Jack Penrod, Kenneth Roberts, Joe Romero, William Short, Charlene Taylor, William Thilmont, Sr., Norma Thompson, Sara Welborn, Paula Wells, Carol Wilcox are citizens and residents of Indiana and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 26.

27. Plaintiffs Robert Lee Ball, Cynthia Burgett, Michael Carrolthers, Bonnie Foster, Merlin Hull, Lori Jean Irwin, Marion Leonard, Donald Livengood, Deborah Luce, Bruna Mattioli, Robyn Moore, Duane Patterson, Dianne Ransom,

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

Chestine Scott, Vivian Wemtz, Lynne Wettig, Lawrence Wilson, Ellsworth Wright, Robert Jr. Davolt, Jesse Sherwood are citizens and residents of Kansas and took Levaquin that was manufactured by Defendants. Because of plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 27.

28. Plaintiffs Lloyd Bryant, Gary Buhrow, Roger Clark, Mozziz DeWalt, Mary Floyd, Dorothy Heron, Patricia Johnson, Charlotte Sober, Judy Stephenson, Laura West are citizens and residents of Kentucky and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 28.

29. Plaintiffs Angenetta Bailey, Rhonda Boudreaux, Kimberly Clark, Robert Harkins, Lawrence Hilts, Sheila Leon, Ellen Finley, Arden Jess Smith are citizens and residents of Louisiana and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 29.

30. Plaintiffs Joseph Feller, Jennifer Jardine, Peggy Ross are citizens and residents of Maine and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 30.

31. Plaintiffs Karen Bradley, Shirley Goldstein, Carol Howard-Leasure, Edwin Lawton, Michael League, Michele Logan, Sheri Malar, Lisa Mitchell, Kalman Parker, Faith Schroeder, Marschere Miller, Josephine Mourning are citizens and residents of Maryland and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 31.

32. Plaintiffs Joseph Convery, Irene DeSantis, Leo DeStefano, Terry Hemby, Nevin Kirk, Harold Kravitz, Brody Lozo, Hope Malnati, Anna Moccaldi, Harold Okun, Mary Jane Taglieri, Richard Woods, Diane Lewandowski are citizens and residents of Massachusetts and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 32.

33. Plaintiffs Beverly Zech, John Altman, Vince Battaglia, James Berney, Teretha Bongalis, Virginia Bullock-Gray, Tammy Burnett, Gina Louise Bums, Guy Bums, John Calvert, Stacey Collins, Lonnie Degg, Connie DeSilvis, Cheryl DeWitt, Bernice Discianno, Linda Doerr, Antonio Dorsey, Luella Edwards, Anita Evans, Terry Fletcher, Jason Lee Franklin, Jan Garrett, Elizabeth Graves, Louis Jones, John Kramer, Deborah LaRaia, Roger May, Gary Miller, Geraldine Newby, Dennis Parker, Dewey Russ, Jr., Susan Stone, Glenny Tiepel, Derek Trapp, Nicole Tucek, Mary Kay Visser, Bela Antal, Charlotte Boatman, Marcia Grace, Bradley McCoy, Mary Slagle, Michael Zielinski, Judy Mullins are citizens and residents of Michigan and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 33.

34. Plaintiffs Bradley Addis, Jesse Archer, Jacquelyn A. Bormann, Nancy I. Brewer, Harry Cushing, Ernest Falk, Larry Fountain, Helen Kane, Ramona Lowell, Carol Luckow, Violet McGee, Eugene O'Neill, Corlyn Ricker, Rodney Thielbar, Cheryl L. Smith are citizens and residents of Minnesota and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 34.

35. Plaintiffs Barbara Gordon-Abston is a citizen and resident of Mississippi and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiff suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff took Levaquin, and therefore denies the

same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 35.

36. Plaintiffs Donald Myers is a citizens and resident of Montana and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiff suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 36.

37. Plaintiffs Carol Lee Chappell, Nancy Edwards, Christine Haar, Lisa Klappenback, Theresa Primavera, Charles Smith, Robert Wierzbicky, Joselito Yambao, Jr., Karen Jones, Brenda Stukey, Joan Caselli-Gross are citizens and residents of Nevada and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 37.

38. Plaintiffs Sandra Martin-Clayton is a citizen and resident of New Hampshire and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiff suffered severe and debilitating tendon injuries.

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 38.

39. Plaintiffs Jennifer Naselaris is a citizen and resident of New Mexico and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiff suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 39.

40. Plaintiffs Tara Reyes is a citizen and resident of New York and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiff suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 40.

41. Plaintiffs Donald Abner, Vicki S. Blommel, David Boswell, Leslie

Brown, Tabitha Bruah, Kimberly Burge, David Darst, Anthony DeGidio, Doris Gordon, JoAnne Hall, Donna Houston, Brenda Jaeger, Darlene Janis, Rick Kidwell, Larry Kollmar, Sandra Logan, Heidi Lowe, Antoinette Powers, Joyce Roth, Mary (Becky) Sacco, Jacob Thompson, Melvin Timberlake, Richard Waldron, Thomas Yerian, Sr., Gayland C. Selby, Kerry Wilkes, Leonard Goldberg are citizens and residents of Ohio and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 41.

42. Plaintiffs Janet Almond, Luann Avens, Peggy Sue Bush, Alton Carter, Barbara Casey, Stella Louise Deeds, Ramona Foshee, Charles Hobbs, Jon Hurley, Joyce Ann Hyde, Sylvia McElhannon, Frances Spence, Carol Starbuck, Diane Rude are citizens and residents of Oklahoma and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 42.

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

43. Plaintiffs Lecia Seaman is a citizen and resident of Oregon and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiff suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 43.

44. Plaintiffs Patricia Bachisn, Alicia Cummins, Brian Dietz, George Fessler, Rhonda Gilkey-Trexler, Virginia Gilmore, Dennis Holcomb, Donna Ludwig, Richard Mosteller, Kerri Sechman, Shirley Thompson, John Wilson, Fretta Pocks, Arthur Lebofsky, Daniel Meinert, Antonio Purificato, Lida Shaffer, Diana Swenson are citizens and residents of Pennsylvania and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 44.

45. Plaintiffs Paul Giguere, Steven Harris, John Mathews, Joyce Terry, Michael Vieira are citizens and residents of Rhode Island and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 45.

46. Plaintiffs James Anderson, Robert Bostic, Carolyn Buck, Vernon Cameron, Paul Clifton, Jr., Regina Collura, Rebecca Crawford, Terry Creswell, Rene Davis, Patrick Ednie, Mary Jane Gavin, Ann Hahn, Billy Hardee, Varney Hannon, Tracy Hooks, Janet Horsman, Suzanne B. Keuper, Alice Faye Newsome, Jane Owenby, Terry Patterson, Vickie Ann Schmitt, Janice Scotti, Rebecca Scruggs, Robert Sheffer, Lynne Sherland-Dupuis, James Sistare, Patsy Smith, Richard Smith, James Spence, Walter Stewart, Blair Webb, Earlean Williams, Rebecca Winchester are citizens and residents of South Carolina and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 46.

47. Plaintiffs Magalene Bailey, Alfred Carnahan, Linda Leffew, Johnny Reed, June Conner, Patricia Cook, William Holly, Carolyn Stinnett are citizens and residents of Tennessee and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 47.

48. Plaintiffs Dennis Barkway, Marilyn Bradford, Neil Bronstein, James Jesse Brooks, James Brugette, Martha Jane Custer, Lois Dwyer, Steven Farrow, Ricky Foxworth, Sharon Hamilton, Robert Hastings, Alicia Hernandez, Phil Hinson, Lois Howard, Wiley James III, Myron Jordan, Lucille Lawhon, Brenda Lege, Bernard Mahan, Shirley Ann Mauney, Rosa Irene Moor, Danny Roberts, Irene Rodriguez, Michele Smith, Wilson Spurlin, Bobie St. Christopher, Nancy Stafford, Beverly Stephens, Virgil Taylor, Loretta Tealer, Marcenia Thomas, James Ulik, Billy Walker, Karen Wells, Karen Young, Michael Abraham, Cynthia Andrews, Janace Bailey, Jane Ann Baker, Josalyn Buchanan, Gilbert Carrasco, Linda Conovaloff, James Decker, Anthony DeFelice, Robelin DeLeon, Jr., Wayne Paul Donaldson, James Dunn, Sr., Donna Ervin, Karen Fields, Aminta Flores, Gary Foster, Ernesto Fusarelli, Gloria Hamilton, Marlissa Hendrix, Cynthia Henneck, Tameca Jenkins, Barton Lachapelle, Linda Lawler, Cynthia Lindley, Michael Mallicoat, Isabel Martinez, Raul Martinez, Robert McLennon, David Medina, Cynthia Mendez, Nicole Moore, Alice Nash, Carl Payton, Ann Sadler-Godwin, Teresa Schanzer, Carol Scroggins, Antonio Taylor, Mimic Terrell, Douglas Williams, Holly Witworth, Tawnya Mitchell, Glenn Casey Nordin, Jr., Norma Brooks are citizens and residents of Texas and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 48.

49. Plaintiffs Carol Hastings, Joseph Atkinson are citizens and residents of Utah and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 49.

50. Plaintiffs Rhonda Bralley, Shirley Creeley, Bernadette Dodson, Vaughn Edwards, Sushila Khanna, Lori Lincoln, Veronica Miller, Linda Phillips, JoAnn T. Ros, Rita Stone, Rick Triplett, Sandra Wilkins are citizens and residents of Virginia and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 50.

51. Plaintiffs Kathleen Ann Russo is a citizen and resident of Vermont and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiff suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 51.

52. Plaintiffs Gayle Baldwin, Laura Berry, Jennie Clingen, Edgar Evans, Clarence J. Gartin, John Graybill, Keith O. Harvey, Daniel Holman, Rick King, David Reavis, Phyllis Sonnier, James Taylor, Jr., Roy Eugene Urpman, Rudolph Weinhandl, Jessica Getsfrid, Loretta Graves, Elizabeth Robertson are citizens and residents of Washington and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 52.

53. Plaintiffs Linda Browning, Virginia Byers, Frank Cosco, Nancy

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

Crawford, Carol Hyatt, Victoria Jennings, Wanda Sue Kincaid, John James Kinney, Jr., Erika Midkiff, Sharon Steorts, Loretta Wilhelm are citizens and residents of West Virginia and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 53.

54. Plaintiffs Julie Kay Adams, Carlos Alvarez, Paul Barrette, Cheryl Bitters, Werner Brandenburg, Norma Conway, Crystal Dow, Renae Furlong, Ryan Gerhardt, David Gordon, Evonne Haak, William Humphrey, Dallas Johnson, Louise Juracka, LouAnn Kocherare citizens and residents of Wisconsin and took Levaquin that was manufactured by Defendants. Because of Plaintiffs' use of Levaquin, Plaintiffs suffered severe and debilitating tendon injuries.

**ANSWER:**

J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' citizenship or residency, and therefore denies the same. Further, J&J lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs took Levaquin, and therefore denies the same. J&J denies that Levaquin was manufactured by all of the Defendants. J&J denies the remaining allegations in Paragraph 54.

55. Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey. At all times relevant hereto, Defendant Johnson & Johnson, either directly or indirectly through third

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

parties or related entities, was and continues to be engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing the pharmaceutical drug Levaquin.

**ANSWER:**

J&J admits that it is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey. J&J denies the remaining allegations in Paragraph 55.

56. Defendant Ortho-McNeil is a Delaware corporation with its principal place of business in Raritan, New Jersey. Defendant Ortho-McNeil is a wholly owned subsidiary of Johnson & Johnson. At all times relevant hereto, Defendant Ortho-McNeil, either directly or indirectly through third parties or related entities, was and continues to be engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing the pharmaceutical drug Levaquin.

**ANSWER:**

J&J admits that OMP was a Delaware corporation with its principal place of business in Raritan, New Jersey. J&J further admits that JPI is a Pennsylvania corporation with its principal place of business in New Jersey and that it is a subsidiary of Johnson & Johnson. J&J admits that Levaquin® was a product of OMP and is a product of JPI but denies the remaining allegations in Paragraph 56.

57. Defendant Johnson & Johnson Pharmaceutical Research & Development is a New Jersey corporation with its principal place of business in Raritan, New Jersey. Defendant Johnson & Johnson Pharmaceutical Research & Development is a wholly owned subsidiary of Johnson & Johnson and was formerly known as R.W. Johnson Pharmaceutical Research Institute. At all times relevant hereto, Defendant Johnson & Johnson Pharmaceutical Research & Development, either directly or indirectly through third parties or related entities, was and continues to be engaged in the business of testing, developing, manufacturing,

distributing, licensing, labeling and marketing the pharmaceutical drug Levaquin.

**ANSWER:**

J&J admits that Defendant Janssen Research & Development, LLC (formerly known as Johnson & Johnson Pharmaceutical Research & Development, LLC, and hereinafter referred to as "JRD") did research, development and testing on Levaquin® but denies the remaining allegations in Paragraph 57. Answering further, JRD is now a New Jersey limited liability company with its principal place of business in New Jersey.

58. At all times relevant herein, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and sold the prescription drug Levaquin in interstate commerce and throughout the State of California. At all times relevant herein, Defendant Ortho-McNeil is and was registered to do business in the State of California.

**ANSWER:**

J&J denies the allegations in Paragraph 58.

59. As more particularly pleaded below, Plaintiff maintains that Levaquin is defectively designed, inadequately tested, dangerous to human health, and lacks proper warnings as to the dangers associated with its use.

**ANSWER:**

J&J denies the allegations in Paragraph 59.

## FACTS

19.[1] Levaquin, Defendants' brand name for the antibiotic levofloxacin, is a broad spectrum synthetic antibacterial agent approved for use in the treatment of a

---

[1] Plaintiffs' Complaint is misnumbered beginning with what should be Paragraph 60, but is misnumbered Paragraph 19. For the sake of consistency, J&J follows Plaintiffs' numbering scheme.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

variety of upper respiratory infections, urinary tract infections, prostatitis, and other bacterial infections. It was first introduced into the U.S. market in 1997.

**ANSWER:**

J&J denies the allegations in Paragraph 19. It did not manufacture or market Levaquin® at any time. J&J further states that Levofloxacin is a synthetic broad spectrum antibacterial agent for oral and intravenous administration. The approved uses of Levaquin® are stated in the package insert.

20. Levaquin is in a class of antibiotics known as fluoroquinolones. The original quinolone antibiotics were developed in the early 1960s and soon revealed themselves as highly effective against common gram-negative bacteria, but resistance developed rapidly. Twenty years later, in the early 1980s, fluorinated derivates of the quinolones emerged, revealing a broader, more potent antibiotic, effective against many different types of infections. These so-called second generation fluoroquinolones included norfloxacin (Noroxin), ciprofloxacin (Cipro), ofloxacin (Floxin), and pefloxacin (never marketed in the U.S.).

**ANSWER:**

J&J denies the allegations in Paragraph 20.

21. Although considered highly effective at killing certain bacteria, fluoroquinolones have long been associated with serious side effects. Indeed, many fluoroquinolones have been removed from the market due to intolerable adverse events. For example, Omniflox (temafloxacin) was removed from the market in 1992 because of low blood sugar, kidney failure, and a certain rare form of anemia; Raxar and Zagam were removed because of QT-interval prolongation among other things; Trovan was removed from the market due to severe liver toxicity; and most recently, Tequin was removed from the market in 2006 amid reports of severe blood sugar reactions such as hyperglycemia and hypoglycemia their safety profiles can differ immensely.

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWER:**

J&J denies the allegations in Paragraph 21.

22. In sum, though fluoroquinolones may share certain pharmacological properties, their safety profiles can differ immensely.

**ANSWER:**

J&J denies the allegations in Paragraph 22, as stated, but admits that different fluoroquinolones may differ in safety profiles.

23. To understand the pharmacological properties of Levaquin, one need look no further than to Levaquin's older brother, ofloxacin (Floxin), also manufactured and distributed by Defendants.

**ANSWER:**

J&J denies the allegations in Paragraph 23.

24. Both Floxin and Levaquin were created and developed by Daiichi, a Japanese Company who holds the patent on both agents. Daiichi assigned the patents to Defendants and gave Defendants an exclusive license to manufacture and market both its fluoroquinolone compounds in the United States in return for royalty fees. Daiichi licenses levofloxacin to Aventis for manufacture and market in European counties. To date, Levaquin remains one of Daiichi's best selling pharmaceuticals.

**ANSWER:**

In response to paragraph 24, J&J admits that Levaquin® was developed by Daiichi, that Johnson & Johnson has a licensing agreement with Daiichi, that OMP manufactured and marketed Levaquin®, that JPI now manufactures and markets Levaquin® pursuant to a licensing agreement, but denies the remaining allegations contained in paragraph 24. It does not market Levaquin®.

25. Daiichi ensured that the post market surveillance of levofloxacin would be tracked world-wide by creating an international database to keep track of adverse events. Daiichi shared the results of the post market surveillance with Defendants.

This database ensured that Defendants could not ignore the post market experience of levofloxacin in other countries.

**ANSWER:**

J&J denies the allegations in Paragraph 25.

26. Ofloxacin was first introduced into the Japanese market in September 1985. Defendants introduced ofloxacin, under the brand name Floxin, in the United States six years later, in 1991.

**ANSWER:**

J&J admits that OMP introduced Floxin in the United States in 1991, but denies the remaining allegations in Paragraph 26. It does not market Levaquin®.

27. Even before ofloxacin was marketed in Japan, Daiichi began researching products that could be the successor of ofloxacin. Daiichi wanted to develop a newer fluoroquinolone in order to be more competitive with Cipro and the other fluoroquinolones by developing a drug with the same or better characteristics of ofloxacin that could be used both orally and by injection.

**ANSWER:**

J&J is without knowledge to admit or deny the allegations contained in paragraph 27 of Plaintiff's Complaint which are directed at Daiichi and puts Plaintiff to his strict burden of proving the allegations contained therein. J&J denies the remaining allegations in Paragraph 27.

28. After many derivatives of ofloxacin were explored and synthesized, Daiichi isolated what is now known as levofloxacin. Levofloxacin is a purified version of one optically active form of ofloxacin, more specifically the L-isomer.

**ANSWER:**

J&J denies the allegations in Paragraph 28 of Plaintiff's Complaint as stated. The chemical composition of Levofloxacin is stated in the package insert.

29. Accordingly, ofloxacin and Levaquin are pharmacologically very similar - in fact, they are so similar that Defendants alleged in their New Drug

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

Application for Levaquin that the safety profile of Levaquin would be expected to mirror that of ofloxacin.

**ANSWER:**

J&J denies the allegations in Paragraph 29.

30. Unfortunately, while Levaquin did closely follow the safety profile of ofloxacin, Levaquin had a worse safety profile with respect to certain adverse effects, including tendon toxicity.

**ANSWER:**

J&J denies the allegations in Paragraph 30.

31. Tendonitis was first reported as a side effect of fluoroquinolones use in 1983. The first case of Achilles tendon rupture was reported in 1991 in conjunction with pefloxacin — a fluoroquinolone that has never been approved in the U.S, in part due to its tenotoxicity. Potentially due to pefloxacin's early use in France, by 1994 French researchers led by Dr. Pierfitte had identified over 100 French patients with fluoroquinolone tendon disorders (mostly pefloxacin). The researchers observed tendon injury occurred more frequently in patients over 60 and especially in those who had received steroid therapy.

**ANSWER:**

J&J denies the allegations in Paragraph 31 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones. J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

32. Although the Achilles tendon was affected the most frequently, and bilaterally in many cases, Dr. Pierfitte reported that other tendons could by implicated as well. Accordingly, the French regulatory body was one of the first to

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

notify physicians and their patients about the risk of fluoroquinolones-induced tendon injury. Additionally, as a likely result of Dr. Pierfitte's published observations, pefloxacin became severely restricted in use by 1995.

**ANSWER:**

J&J denies the allegations in Paragraph 32 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones. J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

33. Once pefloxacin became restricted, Defendants' first generation ofloxacin emerged as the most tenotoxic fluoroquinolone on the market.

**ANSWER:**

J&J denies the allegations in Paragraph 33.

34. One of the first published reports regarding the tendon toxicity of ofloxacin was published in 1995 in the British Journal of Clinical Pharmacology (Wilton, L.V., Pearce, G.L. Mann, RD, A comparison of ciprofloxacin, norfloxacin, ofloxacin, azithrornycin and cefixime examined by observational cohort studies. Br J Clin Pharmacol 1996; 41:277-284).

**ANSWER:**

J&J denies the allegations in Paragraph 34, as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones. J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and the reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

35. In the Wilton report, an analysis of prescription event monitoring data

in the' United Kingdom (a country where pefloxacin was not approved for market) revealed that ofloxacin was more tenotoxic than the other fluoroquinolones examined.

**ANSWER:**

J&J denies the allegations in Paragraph 35 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones. J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

36. The United Kingdom's Regulatory Authority issued a bulletin, published in July 1995, stating that it had received 21 reports of tendon damage associated with fluoroquinolone antibiotics. The Authority reported " . . . elderly patients and those treated concurrently with corticosteroid are at particular risk."

**ANSWER:**

J&J denies the allegations in Paragraph 36 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones. J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and the reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

37. Defendants submitted their New Drug Application regarding Levaquin to the FDA in 1995. Although Defendants indicated that tendon disorders are associated with fluoroquinolone use, Defendants failed to report that ofloxacin was more tendon toxic than other currently marketed fluoroquinolones and failed to report that the tendon toxicity was exacerbated in the elderly, and especially in those

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

taking corticosteroids.

**ANSWER:**

In response to paragraph 37, J&J states that OMP submitted an NDA for Levaquin® and states that OMP and JPI complied with all FDA labeling requirements at all times and made all appropriate reports to the FDA. J&J denies the remaining allegations in Paragraph 37.

38. The first epidemiological study to evaluate the relative risk of fluoroquinolone-induced tendonitis was published in 1999 by pharmacoepidimiologists and researchers at the Department of Epidemiology and Biostatistics and Internal Medicine at Erasmus Medical Center in Rotterdam. Van der Linden PD, Van de Lie J, Nab HW, Knok A, Stricker B H Ch, Achilles tendonitis associated with fluoroquinolones, Br J Clin Pharmacol 1999; 48: 433-437.

**ANSWER:**

J&J denies the allegations in Paragraph 38 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones, and J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and the reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

39. Data analyzed in this retrospective cohort study from 41 general practices in the Netherlands from 1995 and 1996 revealed that that ofloxacin had the strongest association with Achilles tendonitis. The adjusted relative risk of tendonitis to fluoroquinolones was 3.7, while Achilles tendonitis associated with ofloxacin had a relative risk of 10.1. Upon information and belief, Defendants knew of this study and had an obligation to inform the FDA of this study by supplementing their New Drug Application. However, Defendants failed to update their New Drug Application or inform the FDA or the medical community or the

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

results of this study.

**ANSWER:**

J&J denies the allegations in Paragraph 39 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones, and J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and the reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

40. A second epidemiological study published in 2002 by Van der Linden et al. analyzed data from the IMS Health database in the United Kingdom which contained general practice medical records on a source population of 2 million inhabitants. Van der Linden, PD, Sturdenboom MOM, Herings, RMC, Leufkens HGM, Stricker BH Ch, Fluoroquinolones and risk of Achilles tendon disorders: case control study, BMJ 2002; 324:1306-1307.

**ANSWER:**

J&J denies the allegations in Paragraph 40 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones, and J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

41. In this nested case control study, the authors again found that ofloxacin was associated with an eleven-fold increase in tendon disorders. More specifically, the authors found that the relative risk of Achilles tendon disorders following current use of fluoroquinolones was 1.9, but in patients over 60 years of age, the relative risk was 3.2. However, in the elderly, the relative risk was 11.5 for current

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

use of ofloxacin, compared to 2.3 and 1.8 for ciprofloxacin and norfloxacin respectively. In patients of 60 years and older, concurrent use of corticosteroids and fluoroquinolones increased the risk to 6.2. Upon information and belief, Defendants knew of this study and had an obligation to inform the FDA of this study by supplementing their New Drug Application.

**ANSWER:**

J&J denies the allegations in Paragraph 41 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones, and J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and the reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

42. Soon thereafter, in 2003, Dr. Van der Linden published his final epidemiological study, a larger population-based case control study that analyzed cases of Achilles tendon rupture and fluoroquinolone use from 1988 to 1998. Stunningly, his report concluded that the relative risk of a tendon injury in patients over 60 years old taking ofloxacin was 27.7 compared to ciprofloxacin's 3.4. He also found that use of corticosteroids nearly doubled the risk for tendon injury for patients over 60 years old.

**ANSWER:**

J&J denies the allegations in Paragraph 42 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones and J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and the reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

43. Even Daiichi, the inventor of ofloxacin and Levaquin, published a 1997 rat study that admitted that Levaquin and ofloxacin were the most toxic to tendons of all the fluoroquinolones marketed in the United States. The study was designed to not only better understand the pathophysiological mechanism of fluoroquinolone-induced tendon disorders, but also to compare the relative tendon toxicity of ten different fluoroquinolones.

**ANSWER:**

J&J denies the allegations in Paragraph 43 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones, and J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and the reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

44. Although the exact mechanism of how fluoroquinolones cause tendon injury is still being investigated, studies have suggested that fluoroquinolones can degrade tendon cells by causing apoptosis, or a programmable cell death, and therefore lose their integrity, and easily tear and/or rupture.

**ANSWER:**

In response to paragraph 44, J&J admits that there is such a theory of mechanism, which remains unproven, and denies the remaining allegations in Paragraph 44.

45. The outcome of Achilles tendon ruptures in persons over 60 — the population most affected by this adverse reaction, is not favorable. Treatment may include a corticosteroid to decrease inflammation -- the very drug that, when combined with a fluoroquinolone, can dramatically increase the risk of a tendon rupture. In the event of a tendon rupture, the leg is often immobilized through a boot or other casting for anywhere between six weeks to six months, and physical therapy

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

is ordered thereafter. Surgery is frequently not recommended in the elderly population due to poor recovery rates. However, even with immobilization for long periods of time and physical therapy, the Achilles tendons in the elderly rarely fully recover.

**ANSWER:**

In response to paragraph 45, J&J admits that outcomes of tendon ruptures in persons over 60 are variable, and denies the remaining allegations.

46. According to the U.S. consumer watchdog organization, Public Citizen, by 1996 there were over 130 reports of tendon injury from around the world and 52 reports of tendon injury in the United States associated with fluoroquinolone use.

**ANSWER:**

J&J denies the allegations in Paragraph 46. The reports or statements of parties not associated with J&J speak for themselves.

47. As there was no mention of any fluoroquinolone-induced tendon injury on the label, Public Citizen petitioned the FDA in 1996, based on the number of adverse event reports world wide, to require that manufacturers of fluoroquinolones revise their product label to alert physicians of this unusual adverse event.

**ANSWER:**

In response to paragraph 47, J&J admits that Public Citizen did petition the FDA and that the petition speaks for itself. J&J denies the remaining allegations in Paragraph 47.

48. The FDA responded by requiring the following warning on all fluoroquinolone labels:

> "Ruptures of the shoulder, hand, and Achilles tendons that required surgical repair or resulted in prolonged disability have been reported with [the specific drug name]. [The specific drug name] should be discontinued if the patient experiences pain, inflammation, Or _rupture of a tendon. Patients should rest and refrain from exercise until the diagnosis of tendonitis or tendon rupture has been confidently excluded. Tendon rupture can occur at any time during or after therapy with [the specific drug name]."

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWER:**

J&J denies the allegations in Paragraph 48. J&J affirmatively asserts that OMP and JPI complied with all FDA labeling requirements and that the FDA-approved label for Levaquin® contains information on tendon rupture. J&J denies the remaining allegations in Paragraph 48 of Plaintiff's Complaint and puts Plaintiff to his strict burden of proving the allegations contained therein.

49. By 1997, U.S. manufacturers of fluoroquinolones had modified their label. However, the language was buried in a long list of potential adverse reactions; it was not highlighted in any way, such as with bold lettering, or even a heading titled "tendon injury." Moreover, no mention was made of the fact that age and corticosteroid use tripled the risk of tendon injury. No letter to physicians was disseminated, and Defendants did not highlight this unusual side effect when promoting Levaquin to doctors.

**ANSWER:**

J&J denies the allegations in Paragraph 49 of Plaintiff's Complaint and further denies the statements as inaccurate and argumentative characterizations of the contents of the package insert. J&J affirmatively asserts that OMP and JPI complied with all FDA labeling requirements.

50. Levaquin was first introduced in Japan in 1993 and later introduced in the United States in 1997.

**ANSWER:**

J&J admits that OMP began marketing Levaquin® in the United States in 1997. J&J is without sufficient information to admit or deny the remaining allegations in Paragraph 50, and therefore denies those allegations and puts Plaintiff to his strict burden of proving the allegations contained therein.

51. As has previously been alleged and described, before Levaquin's market launch in the United States, Defendants had knowledge that:

a. Levaquin would be as toxic as ofloxacin;

b. Ofloxacin was revealing itself as one of the most tenotoxic fluoroquinolones on the market; and

c. The elderly, and especially those using corticosteroids, were at least three times as likely to suffer a tendon injury.

**ANSWER:**

J&J denies the allegations contained in paragraph 51, including subparts (a) through (c) thereof.

52. Despite this unique knowledge, Defendants chose to use the same label that the FDA required on all other fluoroquinolones. Accordingly, in 1997, most U.S. physicians did not understand fluoroquinolone tendon toxicity, and were completely ignorant of the exceptional vulnerability of the elderly to this antibiotic, especially those dependent on corticosteroids.

**ANSWER:**

J&J denies the allegations in Paragraph 52.

53. A look at Defendants' sales materials could explain why the very group that Levaquin was most toxic to was the very market Defendants were after. Defendants' target market for Levaquin was the elderly — especially those with upper respiratory infections who were likely to be chronic corticosteroid users.

**ANSWER:**

J&J denies the allegations in Paragraph 53.

54. More disturbingly, Defendants' promotional campaign was themed on Levaquin' s excellent safety profile and failed to disclose the risks of tendon injury.

**ANSWER:**

J&J denies the allegations in Paragraph 54.

55. Defendants capitalized on. Levaquin's early introduction into Japan and other countries by using pre-U.S. prescription sales data to assert that Levaquin had been prescribed frequently with few adverse events.

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWER:**

J&J denies the allegations in Paragraph 55.

56. For example, one such advertisement boasted that Levaquin had "An Outstanding Record of Safety" as "[o]ver 63,000,000 patients worldwide" had taken the drug and only diarrhea and nausea had shown up as adverse effects, albeit rarely.

**ANSWER:**

J&J denies the allegations in Paragraph 56.

57. Cleverly, the promotional literature only reported on adverse events in U.S. clinical trials where only a very small sampling of patients took their drug, and where many adverse events do not necessarily reveal themselves. Consequently, Defendants claimed "proven performance" on the 63,000,000 million people that had used Levaquin outside the United States, but chose not to disclose the adverse events that were being reported on this same population.

**ANSWER:**

J&J denies the allegations in Paragraph 57.

58. As Levaquin gained traction in the market, its "Achilles heel" of heightened tenotoxicity revealed itself.

**ANSWER:**

J&J denies the allegations in Paragraph 58.

59. Levaquin enjoyed immediate popularity in the Italian market. Introduced to Italy in 1998, Levaquin became Italy's best selling fluoroquinolone, surpassing Cipro, the major market leader, in just three years. Curiously, ofloxacin, Defendants previous fluoroquinolone, had the lowest market share, which was consistent with Daiichi' s plan to "cannibalize" ofloxacin in favor of Levaquin.

**ANSWER:**

J&J denies the allegations in Paragraph 59.

60. One of the first comparative studies that included post market experience with Levaquin was from Italy. The authors analyzed Italian adverse

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

event data from 1999 to 2001 to help determine the relative toxicity of each marketed fluoroquinolone antibiotic.

**ANSWER:**

In response to paragraph 60, J&J affirmatively alleges that foreign studies speak for themselves as to products studied and conclusions of such studies. J&J denies the remaining allegations in Paragraph 60.

61. The Italian study was published in 2003 and revealed 1) the most frequently reported serious reaction to fluoroquinolones were tendon disorders 2) levofloxacin was the fluoroquinolone with the highest tendonitis reporting rate, and 3) levofloxacin ranked first for tendonitis reports during the same period in the World Health Organization's adverse event database, with 522 reports of levofloxacin-induced tendon disorders and ruptures.

**ANSWER:**

In response to paragraph 61, J&J affirmatively alleges that foreign studies speak for themselves as to products studied and conclusions of such studies. J&J denies the remaining allegations in Paragraph 61.

62. Not surprisingly, in March 2002, the Italian Health Ministry issued a Dear Doctor letter to inform physicians of the risk of Levaquin tendon rupture.

**ANSWER:**

J&J does not market Levaquin® in Italy, and therefore denies the allegations in Paragraph 62. Any foreign publications or statements from regulatory agencies speak for themselves.

63. France also reported a particularly large amount of tendon disorders soon after Levaquin was first marketed to that country in September 2000. By June 2001, in just nine months, 333 adverse reactions had been reported, with tendon disorder being the most frequently reported adverse event. Again, the adverse event data supported the epidemiological evidence finding that tendon injuries were more prominent in the elderly, especially when there had been co administration of

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

corticosteroids.

**ANSWER:**

J&J denies the allegations in Paragraph 63 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding fluoroquinolones. J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and the reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

64. France's regulatory authority published a Dear Doctor letter to highlight this information in 2002.

**ANSWER:**

J&J does not market Levaquin® in France, and therefore denies the allegations in Paragraph 64. Any statements or reports of foreign regulatory agencies speak for themselves.

65. Similarly, the Belgian regulatory authority received 161 reports of Levaquin-induced tendon injury, including 68 reports of tendon rupture, in the first two years of Levaquin's introduction to Belgium. Again, the average age of patients with levofloxacin-associated tendinopathy was 69 years old and about half of these patients were receiving concomitant corticosteroid treatment. As with other adverse event data, the tendon injuries were reported to occur soon after Levaquin was ingested. Belgium also noted, similar to Italy, that the number of tendon disorders associated with levofloxacin was much higher than that of the other fluoroquinolones. Not surprisingly, ofloxacin had the second highest reports of tendon injury.

**ANSWER:**

J&J denies the allegations in Paragraph 65 of Plaintiff's Complaint as stated. The allegations are an incomplete description of the scientific knowledge regarding

fluoroquinolones. J&J states that the scientific literature and studies regarding fluoroquinolones speak for themselves. J&J further states that the scientific literature and the reported research on Levaquin® form part of the basis of the marketing of the drug and the approval of it by the FDA, pursuant to the prescribing information.

66. Recognizing that the number of tendon effects from Levaquin were far more frequent that any of the older fluoroquinolones which had all been on the market over the past ten years, the Belgium regulatory authority also disseminated a Dear Doctor letter in 2002 highlighting their concerns about levofloxacin's toxicity and suggesting that levofloxacin is only justified for the treatment of community-acquired pneumonia in patients who are allergic to beta-lactams. The agency stressed the elderly and people who used corticosteroids were particularly at risk and encouraged doctors that if levofloxacin treatment was necessary, to watch for tendon injury.

**ANSWER:**

In response to paragraph 66, J&J does not market Levaquin® in Belgium, and therefore denies the allegations in Paragraph 66. Any statements or reports of foreign regulatory agencies speak for themselves.

67. After nearly five years on the market in the United States, and following the post-marketing data out of Europe, Defendants finally decided to update their tendon warning.

**ANSWER:**

J&J admits that OMP changed the Levaquin® label in 2001, but denies the remaining allegations in Paragraph 67. J&J affirmatively asserts that OMP and JPI complied with all FDA labeling requirements at all times.

68. The pre-2002 Levaquin label bore the required tendon warning from its market launch in 1997. It was the last of the warnings listed, with no header or any other identification to alert a practitioner to this unusual side effect. The warning

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

was behind gastrointestinal affects, hypersensitivity reactions, and even the rare event of anaphylactic shock.

**ANSWER:**

In response to paragraph 68, J&J affirmatively asserts that the 1997 Levaquin® label included a statement about tendon ruptures approved by the FDA, and states that OMP and JPI complied with FDA labeling regulations and denies the remaining allegations in Paragraph 68.

69. Through an international database managed by Daiichi, Defendants had access to the post market surveillance data all over the world, and specifically France, Belgium, Italy, and the United Kingdom. By 2002, the adverse event data in all those countries consistently and unequivocally revealed that the risk of tendon injury was nearly triple for people over 60 as compared to people under 60. Additionally, Defendants had knowledge of at least one epidemiological study confirming the age effects of fluoroquinolone use. All data pointed to the fact that Levaquin was more tendon toxic than all other fluoroquinolones.

**ANSWER:**

In response to paragraph 69, J&J affirmatively asserts that OMP changed the Levaquin® label in 2002 in accordance with FDA regulations and with FDA approval. Answering further, J&J admits that Daiichi shares post-marketing surveillance data with its licensees of Levaquin® but denies the remaining allegations in Paragraph 69. J&J affirmatively asserts that OMP and JPI have complied with all FDA labeling requirements.

70. In 2002 Defendants updated their label for Levaquin. Despite a wealth of information, Defendants chose not to warn their target patient population — the elderly — with their 2002 warning. Instead, they muted their additional tendon warning by flipping the confounders. Rather than warn that the risk of tendon injury was increased (tripled) in the elderly, the warning stated that that the risk was possibly increased in those using corticosteroids. According to Defendants'

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

warning, any elderly person not on corticosteroids therefore had no additional risk of a tendon injury, and the fact that the warning was so equivocal regarding corticosteroids diffused any possible effect of warning physicians of the effect of age on the frequency and severity and of this debilitating injury. Moreover, Defendants chose not to warn of Levaquin's greater risk of tendon injury relative to the other fluoroquinolones.

**ANSWER:**

J&J denies the allegations in Paragraph 70.

71. Nor did Defendants make any effort to highlight this new information to its prescribing doctors -- Defendants did not send any Dear Doctor letters regarding the 2002 label change to any healthcare practitioners, as had been done in Italy, Belgium, and France.

**ANSWER:**

J&J denies the allegations in Paragraph 71 of Plaintiff's Complaint as stated, but admits that OMP did not send a Dear Doctor letter in 2002. J&J affirmatively asserts that OMP and JPI complied with all FDA labeling requirements.

72. Accordingly, despite the 2002 label change, Levaquin prescriptions only increased, and tendon injuries mounted.

**ANSWER:**

J&J denies the allegations in Paragraph 72.

73. Alarmed by the early post market experience with Levaquin, France, Belgium, Italy, the United Kingdom and other European countries convened before the European Agency for the Evaluation of Medicinal Products (EMEA) as early as September 2001 to discuss a heightened warning for levofloxacin.

**ANSWER:**

J&J denies the allegations in Paragraph 73 of Plaintiff's Complaint as stated. J&J does not market Levaquin® in EMEA countries. J&J further states that the statements or reports of foreign regulatory agencies speak for themselves.

74. The EMEA proposal was that levofloxacin would be singled out as the most tendon toxic of the fluoroquinolones with a warning that stated that levofloxacin (marketed under the brand name Tavanic) was associated with a greater frequency of tendinopathy and tendon rupture than other fluoroquinolones.

**ANSWER:**

J&J does not market Levaquin® in Europe, and therefore denies the allegations in Paragraph 74. J&J further states that the statements or reports of foreign regulatory agencies speak for themselves.

75. Aventis Pharmaceutical was the manufacturer and distributor of levofloxacin in Europe.

**ANSWER:**

In response to the allegations in Paragraph 75, J&J admits that Sanofi-Aventis markets Levaquin® in Europe.

76. Under increasing pressure to agree to the proposed changes to the warning label, Aventis conducted two epidemiological studies in Europe regarding the relative tendon toxicity of levofloxacin. The first study used the United Kingdom's General Practitioners Research Database of medical records from 1997 through 2001, and the second used Germany's Mediplus database of medical records from 1998 to 2001.

**ANSWER:**

J&J denies the allegations in Paragraph 76 of Plaintiff's Complaint as they do not relate to this Defendant. J&J further states that the studies regarding fluoroquinolones speak for themselves.

77. Before releasing the results of the two epidemiology studies to the European regulatory authorities, and ostensibly because of the results of the studies, Aventis contracted with Defendants, specifically Johnson & Johnson Pharmaceutical Research & Development, to fund and co-author a study in the United States on tendon rupture and fluoroquinolones.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

**ANSWER:**

J&J denies the allegations in Paragraph 77 of Plaintiff's Complaint as stated. J&J states that the studies conducted on fluoroquinolones speak for themselves.

78. Advocating that the U.S. Study would be the largest epidemiological study to date and therefore provide the most definitive evidence of the relative risk of levofloxacin and tendon injury, and that the European studies to date were too small from which to base a label change, Aventis convinced the European regulatory authorities to forestall the proposed warning change until the preliminary data from the U.S. study was released.

**ANSWER:**

J&J denies the allegations in Paragraph 78 of Plaintiff's Complaint as they do not relate to this Defendant. J&J states that the studies on fluoroquinolones speak for themselves.

79. In or around April 2002, Aventis submitted the results of their two European epidemiological studies to the United Kingdom's regulatory authority, the Medicines and Healthcare Products Regulatory Agency (MHRA).

**ANSWER:**

J&J denies the allegations in Paragraph 79 as they do not relate to this Defendant. J&J states that the studies on fluoroquinolones speak for themselves.

80. The epidemiology studies conducted by Aventis in Europe concluded that levofloxacin was associated with a higher rate of tendon injury than all the other fluoroquinolones compared. Ofloxacin, the fluoroquinolone indicted in early epidemiological studies as the most tenotoxic, came in second.

**ANSWER:**

J&J denies the allegations in Paragraph 80 as stated. J&J states that foreign studies on fluoroquinolones speak for themselves.

81. An assessor at the MHRA concluded that the two epidemiological studies had findings ". . .supporting a signal generated by spontaneous reporting

with respect to an increased risk of tendinopathy with levofloxacin compared to other fluoroquinolones."

**ANSWER:**

J&J denies the allegations in Paragraph 81 as stated. J&J states that the reports or statements of foreign regulatory agencies speak for themselves.

82. Moreover, the assessor remarked ". . the finding that ofloxacin (the racemate) is associated with an intermediate level of risk makes pharmacological sense, suggesting that the L-rather than the D-isomer of ofloxacin is likely to be responsible for tendon toxicity ... given the consistency and plausibility of the findings, a real difference is the most likely explanation."

**ANSWER:**

J&J denies the allegations in Paragraph 82 as stated. J&J states that the statements or reports of foreign regulatory agencies speak for themselves.

83. By the time Aventis released the results of their epidemiological studies, the preliminary results of the U.S. study was reportedly only six months away. Accordingly, the European regulatory authorities agreed to wait before forcing a label change.

**ANSWER:**

J&J denies the allegations in Paragraph 83 as stated. J&J states that the statements or reports of foreign regulatory agencies speak for themselves.

84. The U.S. epidemiological study was funded and co-authored by Defendant Johnson & Johnson Pharmaceutical Research & Development.

**ANSWER:**

J&J denies the allegations in Paragraph 84.

85. Unlike the healthcare databases in Europe that contain computerized medical records, Johnson & Johnson PRD used data from the Ingenix Research database which consisted of U.S. health insurance claims data from 1997 to 2001. The study analyzed only Achilles tendon ruptures and sought to examine whether

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

fluoroquinolone exposure was a risk factor for this injury. It did not assess the relative risk of Levaquin tendon toxicity, as had been requested by the United Kingdom.

**ANSWER:**

J&J denies the allegations in Paragraph 85.

86. Under the guise of data validation, Defendant Johnson & Johnson PRD created an algorithm that conveniently excluded nearly 70 percent of health claims for elderly persons who suffered Achilles tendon rupture.

**ANSWER:**

J&J denies the allegations in Paragraph 86.

87. The algorithm used CPT procedure codes that only related to surgical repair. This algorithm thereby excluded all those Achilles tendon rupture cases where the patient was casted or booted, as is the case in the elderly population.

**ANSWER:**

J&J denies the allegations in Paragraph 87.

88. By manipulating the data, Defendant Johnson & Johnson PRD was able to exclude the very group that was prone to tendon rupture.

**ANSWER:**

J&J denies the allegations in Paragraph 88.

89. Not surprisingly, the results of the U.S. epidemiological study — the study upon which regulatory action hinged in Europe with ramifications to the U.S. market — revealed for the first time that there was no increased risk of Achilles tendon rupture associated with any fluoroquinolone use. Neither the confounders of age nor corticosteroid use altered these findings.

**ANSWER:**

J&J denies the allegations in Paragraph 89 as stated. J&J states that the studies on fluoroquinolones speak for themselves.

90. Indeed, when one includes the data that was excluded by the algorithm,

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

the result becomes consistent with the approximately eight other epidemiological studies performed on the topic. *See* Seeger et al. Achilles Tendon Rupture and its Associations with Fluoroquinolone Antibiotics and Other Potential Risk Factors in a Managed Care Population, Phannacdepidemiology and Drug Safety 2006; 15: 784-792 ("There was a stronger association with fluoroquinolone antibiotic exposure among these "ruled-out" cases of ATR . . . than among the decision rule confirmed cases. This association was stronger with exposure close to the date of the rupture and was more pronounced among the elderly.")

**ANSWER:**

J&J denies the allegations in Paragraph 90 as stated. J&J states that the studies on fluoroquinolones speak for themselves.

91. As a result of Defendants' misrepresentations in the U.S. Study, the MHRA and the other European regulatory agencies chose not to revise the levofloxacin label as they had previously recommended.

**ANSWER:**

J&J denies the allegations in Paragraph 91.

92. Consistent with their plan to downplay Levaquin's known risk of tendon injury, Defendants made no attempts to educate physicians in the United States about this unusual adverse event. Although Dear Doctor letters had been widely disseminated throughout Europe advising of Levaquin's tendon toxicity and the vulnerability of this adverse event to the elderly, Defendants did not so advise the U.S. physicians.

**ANSWER:**

J&J denies the allegations in Paragraph 92.

93. Defendants plan was to hide behind the class warning and blame any tendon injuries reported on the general pharmacological properties of a fluoroquinolone antibiotic rather than on the L-isomer of the ofloxacin compound as the Aventis studies suggested.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

**ANSWER:**

J&J denies the allegations in Paragraph 93.

94. Promotional material designed and distributed by Defendants, and more specifically, by Ortho-McNeil, consistently omits the risk of tendon injury on materials left with physicians.

**ANSWER:**

J&J denies the allegations in Paragraph 94.

95. Accordingly, physicians continued to prescribe Levaquin believing it to have the same safety profile as Cipro and unaware of the heightened affect of Levaquin on the elderly population.

**ANSWER:**

J&J denies the allegations in Paragraph 95.

96. A review of the events in the FDA Adverse Event database from 1997 through 2005, for Levaquin alone, showed 1,044 reports of tendon injuries, with 282 reports of tendon rupture. This six year figure for tendon affects associated with Levaquin far surpassed the ten year history of tendon affects from 1985 through 1995 associated with all pre-Levaquin fluoroquinolones.

**ANSWER:**

J&J denies the allegations in Paragraph 96.

97. After Cipro went generic in 2003, Levaquin became the number one prescribed fluoroquinolone in the United States. And when Zithromax, a highly popular macrolide antibiotic, went generic after its patent expired in 2005, Levaquin became the number one prescribed antibiotic in the world in 2006.

**ANSWER:**

J&J denies the allegations in Paragraph 97.

98. Corresponding with Levaquin's increased popularity, the number of adverse events reported to the FDA reported soared. 143 tendon related injuries were reported in 2006, and in just the first quarter 2007, 107 tendon related injuries

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

were reported where Levaquin was the primary suspect.

**ANSWER:**

J&J denies the allegations in Paragraph 98.

99. At the request of the FDA, in April 2007, the Levaquin label changed for a third time with regard to tendon injuries. The new label was not a black box. The new label continued to bury the tendon warnings in a list of potential side effects that are less frequent and less severe. The new label did not warn of Levaquin's greater tendon toxicity as compared to the other fluoroquinolones available in the U.S. market.

**ANSWER:**

J&J denies the allegations in Paragraph 99 and states that the 2007 label speaks for itself. J&J affirmatively asserts that OMP and JPI have complied with all FDA labeling requirements.

100. The Defendants did not make any efforts to highlight this change or notify doctors of the change in the warning for Levaquin.

**ANSWER:**

J&J denies the allegations in Paragraph 100. J&J affirmatively asserts that OMP and JPI have complied with all FDA labeling requirements.

101. A fourth label change occurred in or about July 2008, again at the request of the FDA. Upon information and belief, Defendants negotiated with the FDA and insisted on a class warning to thereby minimize the heightened risk of tendon injury with Levaquin. Consequently, the new label fails to alert physicians and prescribing health care providers that Levaquin is more toxic to the tendons than the other fluoroquinolones available in the U.S. market. Health care providers have no warning that Levaquin is much more tenotoxic than other drugs in the class and therefore will interpret the relative risk of a Levaquin-induced tendon injury inappropriately.

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWER:**

J&J denies the allegations in Paragraph 101. J&J affirmatively asserts that OMP and JPI have complied with all FDA labeling requirements.

102. While the new label does carry a black box warning of the increased risk of tendinitis and tendon rupture, with a further increased risk in those over age 60, in kidney, heart, and lung transplant recipients, and with use of concomitant steroid therapy these risks continue to be understated by Defendants.

**ANSWER:**

In response to the allegations in Paragraph 102, J&J denies the allegations contained therein and states that they are an incomplete statement of the warning and further states that the warning referenced therein speaks for itself.

103. Defendants continue to market Levaquin as a first line therapy for the common bronchitis and sinusitis infections, and for other common infections where many other safer antibiotics are available.

**ANSWER:**

J&J denies the allegations in Paragraph 103.

**COUNT I**

**(STRICT LIABILITY)**

104. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege as follows:

**ANSWER:**

J&J incorporates its responses to the preceding paragraphs herein.

105. At all relevant times hereto, Defendants were engaged in the development, testing, manufacturing, marketing and sale of Levaquin. Defendants designed, manufactured, marketed, and sold Levaquin to medical professionals and their patients, knowing it would be ingested for the treatment of infections.

**ANSWER:**

In response to paragraph 105, J&J admits part of the allegations and denies

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

part of the allegations, and affirmatively alleges that (1) JRD did research, development and testing on Levaquin®; (2) JRD did not manufacture, market, sell or distribute Levaquin®; (3) Johnson & Johnson did not design, test, manufacture, market, sell or distribute Levaquin®; and (4) Levaquin® was a product of OMP and is now a product of JPI. J&J denies the remaining allegations in Paragraph 105.

106. Levaquin as designed, manufactured, marketed and sold by Defendants reached Plaintiffs without substantial change in its condition and was used by Plaintiffs in a reasonably foreseeable and intended manner.

**ANSWER:**

In response to paragraph 106, J&J affirmatively alleges that it has no knowledge of the condition of the products after they was sold.

107. Levaquin was defective and unreasonably dangerous when it entered the stream of commerce and was received by Plaintiffs because it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer. At no time did Plaintiffs have reason to believe that Levaquin were in a condition not suitable for its proper and intended use among patients.

**ANSWER:**

J&J denies the allegations in Paragraph 107.

108. Levaquin was used in the manner for which it was intended, that is, for treatment of bacterial infections. This use resulted in injury to Plaintiffs.

**ANSWER:**

In response to paragraph 108, J&J is without sufficient information to admit or deny the allegation that Plaintiffs used Levaquin® in the manner for which it was intended, and therefore denies the same. J&J denies the remaining allegations in Paragraph 108.

109. Plaintiffs were not able to discover, nor could Plaintiffs have discovered through the exercise of reasonable care, the defective nature of

Levaquin. Furthermore, in no way could Plaintiffs have known that Defendants had designed, developed, and manufactured Levaquin in such a way as to increase the risk of harm or injury to the recipients of Levaquin.

**ANSWER:**

J&J denies the allegations in Paragraph 109.

110. Levaquin is defective in design because of its propensity to cause tendon ruptures and other serious tendon injuries.

**ANSWER:**

J&J denies the allegations in Paragraph 110.

111. Levaquin is unreasonably dangerous because it was sold to Plaintiffs without adequate warnings regarding, inter alia, the propensity of Levaquin to cause serious tendon injuries; Levaquin is more toxic to the tendons than the other fluoroquinolones available in the U.S. market; the post-marketing experience with Levaquin; the increased risk of tendon injury in patients over the age of 60; the numbers of tendon-related adverse events reported; and the probability of suffering an acute tendon injury when ingesting corticosteroids concomitantly with Levaquin or post Levaquin use.

**ANSWER:**

J&J denies the allegations in Paragraph 111.

112. Defendants failed to develop and make available alternative products that were designed in a safe or safer manner, even though such products were feasible and marketable at the time Defendants sold Levaquin to Plaintiffs.

**ANSWER:**

J&J denies the allegations in Paragraph 112.

113. Defendants had knowledge and information confirming the defective and dangerous nature of Levaquin. Despite this knowledge and information, Defendants failed to adequately and sufficiently warn Plaintiffs and Plaintiffs' physicians that Levaquin causes serious tendon injuries including, without

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

limitation, tendon ruptures.

**ANSWER:**

J&J denies the allegations in Paragraph 113.

114. As a direct and proximate result of Defendants' wrongful conduct, including the defective and dangerous nature and design of Levaquin and the inadequate warnings, Plaintiffs have sustained and will continue to sustain severe and debilitating injuries, economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, and pain and suffering, for which Plaintiffs are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment in Plaintiffs' favor and against Defendants for:

a) Actual and compensatory damages;

b) Costs of suit;

c) Pre judgment and post-judgment interest; and

d) Such other and further relief as the Court deems just and proper under the circumstances.

**ANSWER:**

J&J denies the allegations in Paragraph 114. In response to the paragraph beginning with the word "WHEREFORE," and the subparagraphs numbered (a) through (d) which follow Paragraph 114, J&J denies the allegations contained therein, and specifically denies that the Plaintiffs are entitled to any relief for their alleged causes of action.

**COUNT II**

**(NEGLIGENCE)**

115. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege as follows:

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

**ANSWER:**

J&J incorporates its responses to the preceding paragraphs herein.

116. At all relevant times, Defendants had a duty to exercise reasonable care in the design, testing, manufacture, marketing, sale, and distribution of Levaquin, including a duty to ensure that Levaquin did not pose a significantly increased risk of bodily injury to its users.

**ANSWER:**

In response to paragraph 116, J&J states that the allegations contained therein call for a legal conclusion to which no response is necessary, but responding further J&J denies those allegations to the extent they seek to impose obligations on J&J beyond those required by law.

117. Defendants had a duty to exercise reasonable care in the advertising and sale of Levaquin, including a duty to warn Plaintiffs and other consumers of the dangers associated with the consumption of Levaquin that were known or should have been known to Defendants at the time of the sale of Levaquin to the Plaintiffs.

**ANSWER:**

In response to paragraph 117, J&J states that the allegations contained therein call for a legal conclusion to which no response is necessary, but responding further J&J denies those allegations to the extent they seek to impose obligations on J&J beyond those required by law.

118. Defendants failed to exercise reasonable care in the design, testing, manufacture, marketing, sale and distribution of Levaquin because Defendants knew or should have known that Levaquin had a propensity to cause serious injury, including tendon ruptures and other serious tendon injuries.

**ANSWER:**

J&J denies the allegations in Paragraph 118.

119. Defendants failed to exercise ordinary care in the labeling of Levaquin and failed to issue adequate pre-marketing or post-marketing warnings to

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

prescribing doctors and the general public regarding the risk of serious injury, including, without limitation, tendon ruptures.

**ANSWER:**

J&J denies the allegations in Paragraph 119.

120. Defendants knew or should have known it was foreseeable that Plaintiff could suffer an injury as a result of Defendants' failure to exercise ordinary care as described above.

**ANSWER:**

J&J denies the allegations in Paragraph 120.

121. Defendants breached their duty of reasonable care to Plaintiff by failing to exercise due care under the circumstances.

**ANSWER:**

J&J denies the allegations in Paragraph 121.

122. As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, formulation, manufacture, sale, labeling and distribution of Levaquin, Plaintiffs ingested Levaquin and suffered severe and debilitating injuries, economic loss, and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, and pain and suffering, for which Plaintiffs are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment in Plaintiffs' favor and against Defendants for:

a) Actual and compensatory damages;

b) Costs of suit;

c) Pre-judgment and post-judgment interest; and

d) Such other and further relief as the Court deems just and proper under the circumstances.

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWER:**

J&J denies the allegations in Paragraph 122. In response to the paragraph beginning with the word "WHEREFORE," and the subparagraphs numbered (a) through (d) which follow Paragraph 122, J&J denies the allegations contained therein, and specifically denies that the Plaintiffs are entitled to any relief for their alleged causes of action.

## COUNT III

## (BREACH OF IMPLIED WARRANTIES)

123. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege as follows:

**ANSWER:**

J&J incorporates its responses to the preceding paragraphs herein.

124. Defendants designed, manufactured, marketed, and sold Levaquin as has previously been alleged and described herein.

**ANSWER:**

In response to paragraph 124, J&J admits part of the allegations and denies part of the allegations, and affirmatively alleges that (1) JRD did research, development and testing on Levaquin®; (2) JRD did not manufacture, market, sell or distribute Levaquin®; (3) Johnson & Johnson did not design, test, manufacture, market, sell or distribute Levaquin®; and (4) Levaquin® was a product of OMP and is a product of JPI. J&J denies the remaining allegations in Paragraph 124.

125. At the time Defendants marketed, sold and distributed Levaquin, Defendants knew of the use for which Levaquin was intended and impliedly warranted that Levaquin was merchantable, safe and fit for its intended purpose: namely that Plaintiffs could ingest Levaquin without the risk of serious injury.

**ANSWER:**

In response to paragraph 125, J&J states that the allegations contained therein

call for a legal conclusion to which no response is necessary, but responding further J&J denies those allegations to the extent they seek to impose obligations on J&J beyond those required by law.

126. Plaintiffs, foreseeable users of Levaquin, and Plaintiffs' physicians, reasonably relied upon Defendants' judgment and implied warranties in purchasing and consuming Levaquin as intended.

**ANSWER:**

In response to paragraph 126, J&J is without sufficient information to admit or deny the allegations of this paragraph and therefore denies the same.

127. Levaquin was defective, unmerchantable, and unfit for ordinary use when sold, and subjected Plaintiffs to severe and permanent injuries.

**ANSWER:**

J&J denies the allegations in Paragraph 127.

128. Defendants breached their implied warranties because Levaquin was and continues to be neither of merchantable quality nor safe for its intended use in that Levaquin has the propensity to cause tendon ruptures, other debilitating tendon injuries, and bodily harm.

**ANSWER:**

J&J denies the allegations in Paragraph 128, and denies that it breached any warranties, if any, extended by operation of law.

129. As a direct and proximate result of Defendants' breach of the implied warranties of merchantability and fitness for its intended purpose, Plaintiffs ingested Levaquin and suffered severe and debilitating. injuries, economic loss, and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, and pain and suffering, for which Plaintiffs are entitled to compensatory and equitable damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment in Plaintiffs' favor and against

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Defendants for:

a) Actual and compensatory damages;

b) Costs of suit;

c) Pre-judgment and post-judgment interest; and

d) Such other and further relief as the Court deems just and proper under the circumstances.

**ANSWER:**

J&J denies the allegations in Paragraph 129. In response to the paragraph beginning with the word "WHEREFORE," and the subparagraphs numbered (a) through (d) which follow Paragraph 129, J&J denies the allegations contained therein, and specifically denies that the Plaintiffs are entitled to any relief for their alleged causes of action.

**COUNT IV**

**(BREACH OF EXPRESS WARRANTY)**

130. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege as follows:

**ANSWER:**

J&J incorporates its responses to the preceding paragraphs herein.

131. Defendants through their marketing program, promotional activities, product labeling, package inserts, and other written and verbal assurances expressly warranted to physicians and consumers, including Plaintiffs and/or Plaintiffs' physicians, that Levaquin had been shown by scientific study to be safe for its intended use.

**ANSWER:**

J&J denies the allegations in Paragraph 131.

132. Plaintiffs, and/or Plaintiffs' physicians, reasonably relied upon Defendants' express warranties in purchasing consuming, and prescribing Levaquin.

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ANSWER:**

J&J denies the allegations in Paragraph 132.

133. Defendants breached their express warranties because Levaquin, as manufactured and sold by Defendants, does not conform to these express representations in that Levaquin has a propensity to cause tendon ruptures, other serious tendon injuries, and bodily harm.

**ANSWER:**

J&J denies the allegations in Paragraph 133 and denies that it extended any express warranties to Plaintiff.

134. As a direct and proximate result of Defendants' breach of its express warranties, Plaintiffs ingested Levaquin and suffered severe and debilitating injuries, economic loss, and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, and pain and suffering, for which Plaintiffs are entitled to compensatory and equitable damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment in Plaintiffs' favor and against Defendants for:

a) Actual and compensatory damages;

b) Costs of suit;

c) Pre-judgment and post-judgment interest; and

d) Such other and further relief as the Court deems just and proper under the circumstances.

**ANSWER:**

J&J denies the allegations in Paragraph 134. In response to the paragraph beginning with the word "WHEREFORE," and the subparagraphs numbered (a) through (d) which follow Paragraph 134, J&J denies the allegations contained therein, and specifically denies that the Plaintiffs are entitled to any relief for their alleged causes of action.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

**COUNT V**

**(<u>COMMON LAW FRAUD</u>)**

135. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

**<u>ANSWER:</u>**

J&J incorporates its responses to the preceding paragraphs herein.

136. Defendants were under a duty and failed to discharge their duty to exercise reasonable care to disclose to Plaintiffs and Plaintiffs' doctors the defective nature and risks that Levaquin can cause severe and permanent injuries, including, without limitation, tendon ruptures, of which they had special knowledge not available to Plaintiffs or Plaintiffs' doctors, and as to which they made affirmative representations in violation of all applicable laws, and concealed material facts relating to the defective nature and risks of Levaquin, which were peculiarly within its knowledge, knowing that Plaintiffs and Plaintiffs' doctors would rely on the presumption that no such facts exist.

**<u>ANSWER:</u>**

J&J denies the allegations in Paragraph 136.

137. Defendants knew that Levaquin has a propensity to cause severe and permanent injuries, including, without limitation, tendon ruptures; indeed, Defendants knew that tendon injuries associated with Levaquin had occurred for years. Defendants had actual knowledge at the time of sale of Levaquin to the Plaintiffs that Levaquin created a risk of serious bodily injury to its users, including, without limitation, tendon injuries, based, in part, upon test results, studies, adverse reaction reports, regulatory action in foreign countries, published reports, and their own clinical trials and post-marketing surveillance of Levaquin and its molecularly similar counterpart, ofloxacin.

**<u>ANSWER:</u>**

J&J denies the allegations in Paragraph 137 and states that serious as well as

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

minor side effects, including tendon rupture, have been reported in conjunction with use of all quinolones, including Levaquin®. J&J further states that the FDA-approved prescribing information for Levaquin® has at all times contained the appropriate information for the prescribing physician.

138. At all times during the course of dealing between Defendants and Plaintiffs, Defendants knowingly and recklessly omitted and concealed information peculiarly within their knowledge to the Plaintiffs, Plaintiffs' doctors, the scientific community and to the general public—e.g., the dangers of Levaquin, including the special risk of tendon injury and tendon ruptures, particularly to the elderly-knowing that the scientific community, the general public, the Plaintiffs and Plaintiffs' doctors, would rely on the presumption that the dangers did not exist.

**ANSWER:**

J&J denies the allegations in Paragraph 138.

139. Defendants actively concealed from the Plaintiffs, Plaintiffs' doctors, the scientific community and the general public:

i. that their own test results, published studies, and/or clinical trials showed a statistically high risk of serious tendon injuries associated with Levaquin including, without limitation, tendon ruptures; and/or

ii. that Levaquin is more toxic to the tendons than the other fluoroquinolones available in the U.S. market that Levaquin was not adequately tested for serious tendon injuries before or after its introduction on the market; and/or

iv. that Levaquin was, in fact, unsafe as it posed a risk of injury which outweighed any purported benefits.

**ANSWER:**

J&J denies the allegations in Paragraph 139, including subparts (i) through (iv) thereof.

140. Defendants misrepresented that Levaquin was safe and effective for its

intended uses by affirmative misrepresentation, and/or active concealment and omission of material facts regarding the safety and effectiveness of Levaquin, and by their course of conscious or intentional conduct succeeded in selling and marketing dangerous, defective, and ineffective antibiotics to be ingested by Plaintiffs. Defendants intentionally omitted, concealed and/or suppressed this information from consumers, including Plaintiffs and Plaintiffs' doctors, in order to avoid losses in. to consumers and market share to its major competitors.

**ANSWER:**

J&J denies the allegations in Paragraph 140.

141. Moreover, Defendants engaged in an aggressive marketing strategy, which included false representations regarding the safety profile and known adverse side effects of Levaquin to create the impression and to convey to Plaintiffs and the general public that:

i. Levaquin had a favorable safety profile and was fit for human consumption;

ii. the benefits of taking Levaquin outweighed any associated risks; and

iii. the use of Levaquin was safe and had fewer adverse health and side effects than Were known or should have been known by Defendants at the time of these representations.

**ANSWER:**

J&J denies the allegations in Paragraph 141, including subparts (i) through (iii) thereof.

142. The omissions, misrepresentations and concealment described in the preceding paragraphs occurred, without limitation, in the Levaquin warning labels, advertisements and promotional materials, in the Johnson & Johnson funded or created scientific reports, and the failure to provide other special notification of the dangers of Levaquin to the Plaintiffs or Plaintiffs' physicians, for example, "Dear Doctor" letters. The Defendants' statements omitted, concealed, and misrepresented

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

the dangers of serious injury, including, but not limited to, tendon ruptures, particularly to the elderly, to Plaintiffs and Plaintiffs' prescribing doctors.

**ANSWER:**

J&J denies the allegations in Paragraph 142.

143. Defendants engaged in fraud by deliberately and affirmatively concealing and failing to disclose adverse reactions of Levaquin to Plaintiffs, Plaintiffs' doctors, the scientific community, and the general public, and by disseminating only positive and misleading scientific data, and by concealing scientific data that showed increased risk of tendon-related injury, to Plaintiffs, Plaintiffs' doctors, the scientific community, and the general public.

**ANSWER:**

J&J denies the allegations in Paragraph 143.

144. Plaintiffs and Plaintiffs' doctors relied on the warning labels as they appeared in the patient package insert at the time Plaintiffs were prescribed Levaquin. The applicable warnings concealed and omitted material facts relating to the defective nature and risks of Levaquin. These dangers were peculiarly within the Defendants' knowledge, and were omitted and concealed knowing that Plaintiffs and Plaintiffs' doctors would rely on the presumption that no such facts exist.

**ANSWER:**

J&J denies the allegations in Paragraph 144.

145. Defendants knew or should have known that their representations and omissions regarding the safety of Levaquin were, in fact, false and/or misleading, and actively made such representations and omissions with the intent, design, and purpose that Plaintiffs and others, including prescribing physicians, rely on these representations leading to the prescription, purchase and consumption of Levaquin.

**ANSWER:**

J&J denies the allegations in Paragraph 145.

146. At all times herein, Plaintiffs and Plaintiffs' physicians were unaware

of the dangers of Levaquin with respect to tendon ruptures, including the special risk of tendon injury to the elderly, and were reasonably misled by the Defendants' omission of information about this danger.

**ANSWER:**

J&J denies the allegations in Paragraph 146.

147. At all times herein, Plaintiffs and Plaintiffs' physicians were unaware of the falsity underlying Defendants' statements and reasonably believed Defendants' false statements about the safety and efficacy of Levaquin to be true.

**ANSWER:**

J&J denies the allegations in Paragraph 147.

148. Plaintiffs and Plaintiffs' doctors could not have discovered Defendants' fraudulent and misleading conduct at an earlier date through the exercise of reasonable diligence because Defendants actively concealed their deceptive, misleading and unlawful activities.

**ANSWER:**

J&J denies the allegations in Paragraph 148.

149. Plaintiffs and Plaintiffs' physicians did, and could be expected to, reasonably and justifiably rely on Defendants' representations and omissions because Defendants held themselves out as having expertise and specialized knowledge in the pharmaceutical industry.

**ANSWER:**

J&J denies the allegations in Paragraph 149.

150. Plaintiffs justifiably relied upon to Plaintiffs' detriment and/or were induced by Defendants' false statements and active concealment over the safety of Levaquin, in part, because at no time did Plaintiffs or Plaintiffs' physicians have the knowledge or expertise necessary to independently evaluate the safety of Levaquin.

**ANSWER:**

J&J denies the allegations in Paragraph 150.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

151. Defendants' misrepresentations, concealment, suppression and omissions were made willfully, wantonly, uniformly, deliberately, and/or recklessly, in order to induce Plaintiffs to purchase Levaquin and Plaintiffs and Plaintiffs' physicians did reasonably and justifiably rely upon the material misrepresentations and omissions made by the Defendants about Levaquin when agreeing to purchase and/or ingest Levaquin.

**ANSWER:**

J&J denies the allegations in Paragraph 151.

152. As a direct and proximate result of Defendants' false representations and/or active concealment of material facts regarding the safety and efficacy of Levaquin, Plaintiffs ingested Levaquin and suffered severe and debilitating injuries and economic loss, including but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, and pain and suffering in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment in Plaintiffs' favor and against Defendants for:

a) Actual and compensatory damages;

b) Costs of suit;

c) Pre-judgment and post-judgment interest;

d) Attorney's fees, and

e) Such other and further relief as the Court deems just and proper under the circumstances.

**ANSWER:**

J&J denies the allegations in Paragraph 152. In response to the paragraph beginning with the word "WHEREFORE," and the subparagraphs numbered (a) through (d) which follow Paragraph 152, J&J denies the allegations contained therein, and specifically denies that the Plaintiffs are entitled to any relief for their alleged causes of action.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**COUNT VI**

**(UNJUST ENRICHMENT)**

153. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

**ANSWER:**

J&J incorporates its responses to the preceding paragraphs herein.

154. As the intended and expected result of their conscious wrongdoing, Defendants have profited and benefited from the purchase and implementation of Levaquin by Plaintiffs.

**ANSWER:**

J&J denies the allegations in Paragraph 154.

155. Defendants have voluntarily accepted and retained those profits and benefits, derived from Plaintiffs, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been - represented by Defendants, or that Plaintiffs, as reasonable consumers, expected to receive.

**ANSWER:**

J&J denies the allegations in Paragraph 155.

156. By virtue of the conscious wrongdoing alleged above, Defendants have been unjustly enriched at the expense of Plaintiffs, who are entitled in equity, and hereby seek, the disgorgement and restitution of Defendants' wrongful profits, revenues and benefits, to the extent and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

WHEREFORE, Plaintiffs demand judgment in Plaintiffs' favor and against the Defendants for:

a) Actual and compensatory damages;

b) Costs of suit;

c) Pre-judgment and post-judgment interest; and

d) Such other and further relief as the Court deems just and proper under the circumstances.

**ANSWER:**

J&J denies the allegations in Paragraph 156. In response to the paragraph beginning with the word "WHEREFORE," and the subparagraphs numbered (a) through (d) which follow Paragraph 156, J&J denies the allegations contained therein, and specifically denies that the Plaintiffs are entitled to any relief for their alleged causes of action.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

## SEPARATE DEFENSES

Johnson & Johnson also asserts the following separate defenses. By alleging the separate defenses set forth below, Johnson & Johnson is not in any way agreeing or conceding that it has the burden of proof or the burden of persuasion on any of these issues.

## FIRST SEPARATE DEFENSE

Plaintiffs' Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

## SECOND SEPARATE DEFENSE

The injuries and damages claimed by Plaintiffs, if any, were caused in whole or in part by the acts or omissions of persons over whom J&J has no control or right of control.

## THIRD SEPARATE DEFENSE

At all times mentioned herein, Plaintiffs were negligent, careless, and at fault, and conducted themselves so as to contribute substantially to their alleged injuries and damages. Said negligence, carelessness, and fault of Plaintiffs bars in whole or

in part the damages which Plaintiffs seek to recover herein.

**FOURTH SEPARATE DEFENSE**

Plaintiffs knowingly and voluntarily assumed any and all risks associated with the use of the products at issue in this case, and such assumption of the risks bars in whole or in part the damages Plaintiffs seek to recover herein.

**FIFTH SEPARATE DEFENSE**

Plaintiffs' alleged damages, if any, are barred in whole or in part by Plaintiffs' failure to mitigate such damages.

**SIXTH SEPARATE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because the product at issue was at all relevant times manufactured and sold consistent with available technology, scientific knowledge, and the state of the art, and in compliance with all federal, state, and local laws and regulations, and was accompanied by product information and warnings that were reasonable, full and adequate and in accordance with FDA regulating requirements and the state of medical and scientific knowledge then in existence.

**SEVENTH SEPARATE DEFENSE**

If the JPI products are unsafe in any way, they are unavoidably unsafe. Plaintiffs' purported action is, therefore, barred by Comment k of § 402A of the Restatement (Second) of Torts and/or other applicable law.

**EIGHTH SEPARATE DEFENSE**

Even if there was negligence and/or breach of warranty on their part in the manufacture and sale of the pharmaceutical medication, which Defendant expressly denies, such negligence and/or breach of warranty was not the proximate or producing cause of Plaintiffs' alleged injuries or damages.

**NINTH SEPARATE DEFENSE**

Plaintiffs' alleged injuries and damages attributable to the use of the products at issue in this case, if any, were not legally caused by the products at issue, but

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

instead were legally caused by intervening and superseding causes or circumstances.

**TENTH SEPARATE DEFENSE**

If Plaintiffs incurred any injuries or damages as a result of the use of the pharmaceutical medication, which Defendant denies, such injuries or damages were due to an idiosyncratic or idiopathic reaction, or by an unforeseeable or pre-existing condition, without any negligence or culpable conduct of Defendant.

**ELEVENTH SEPARATE DEFENSE**

Plaintiffs' claims and causes of action are preempted by Medical Device Amendments to the Federal Food, Drug & Cosmetic Act and the FDA regulations promulgated pursuant thereto.

**TWELFTH SEPARATE DEFENSE**

Plaintiffs' causes of action are barred by the applicable statutes of limitation, statutes of repose, and/or doctrine of laches.

**THIRTEENTH SEPARATE DEFENSE**

Plaintiffs' causes of action are barred by the doctrines of informed consent, release, and waiver.

**FOURTEENTH SEPARATE DEFENSE**

Plaintiffs' causes of action are barred by the learned intermediary doctrine.

**FIFTEENTH SEPARATE DEFENSE**

Defendant did not make to Plaintiffs nor did it breach any express or implied warranties and/or breach of any warranties created by law. To the extent that Plaintiffs rely on any theory of breach of warranty, such claims are barred by applicable law, and for lack of privity with Defendant and/or failure of Plaintiffs, or Plaintiffs' representatives, to give timely notice to Defendant of any alleged breach of warranty. Defendant further specifically pleads as to any breach of warranty claim all defenses under the Uniform Commercial Code existing and which may arise in the future.

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

**SIXTEENTH SEPARATE DEFENSE**

Plaintiffs' claims of product defects are barred by Sections 2, 4, and 6(c) and (d) of the Restatement (Third) of Torts: Products Liability.

**SEVENTEENTH SEPARATE DEFENSE**

The strict liability cause of action of Plaintiffs' Complaint is subject to the limitations placed upon the doctrine of strict product liability for a purported design defect set forth in, *e.g., Artiglio v. Superior Court* (1994) 22 Cal.App.4th 1388.

**EIGHTEENTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under California law.

**NINETEENTH SEPARATE DEFENSE**

The liability of Defendant, if any, for Plaintiffs' non-economic loss must be apportioned in accordance with the provisions of California Civil Section 1431.2.

**TWENTIETH SEPARATE DEFENSE**

Plaintiffs' claims should be diminished in whole or in part in the amount paid to Plaintiffs by any party or non-party with whom Plaintiffs have settled or may settle.

**TWENTY-FIRST SEPARATE DEFENSE**

Plaintiffs' damages, if any, are barred or limited by the payments received from collateral sources.

**TWENTY-SECOND SEPARATE DEFENSE**

Defendant is entitled to, and claims the benefits of, all defenses and presumptions set forth in or arising from any rule of law or statute in any state whose law is deemed to apply in this case.

**TWENTY-THIRD SEPARATE DEFENSE**

Plaintiffs' claims are barred by the equitable doctrine of estoppel.

**TWENTY-FOURTH SEPARATE DEFENSE**

Plaintiffs' alleged injuries are a result of pre-existing and/or unrelated medical

conditions for which Defendant is not responsible.

**TWENTY-FIFTH SEPARATE DEFENSE**

To the extent Plaintiffs' claims are based on alleged misrepresentations or omissions made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341 (2001).

**TWENTY-SIXTH SEPARATE DEFENSE**

Plaintiffs have failed to plead allegations of fraud, mistake, or deception with the specificity or detail required.

**TWENTY-SEVENTH SEPARATE DEFENSE**

Plaintiffs' claims should be dismissed, reduced, offset, or barred in accordance with the principles of comparative negligence.

**TWENTY-EIGHTH SEPARATE DEFENSE**

To the extent that the product at issue in this lawsuit was changed, altered, or modified after it left the control of the manufacturer, such change, alteration, or modification was the legal cause of Plaintiffs' injuries, if any.

**TWENTY-NINTH SEPARATE DEFENSE**

Plaintiffs' product liability claims are barred because the benefits of the relevant product outweighed the risk.

**THIRTIETH SEPARATE DEFENSE**

Any claim for punitive or exemplary damages against Defendant is unconstitutional in that recovery of punitive or exemplary damages in this case would violate Defendant's constitutional rights to due process and equal protection under the Fourteenth Amendment to the Constitution of the United States and similar protections afforded by the New Jersey, Missouri, Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania,

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Vermont, Washington, West Virginia, and Wisconsin state constitutions, and any other state whose law is deemed to apply in this case, and that any law of the states New Jersey, Missouri, Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Vermont, Washington, West Virginia, and Wisconsin, whether enacted by that state's legislature or founded upon a decision or decisions of the courts, or that of any other state whose law is deemed to apply in this case, that would permit recovery of punitive or exemplary damages, is unconstitutional under these provisions.

**THIRTY-FIRST SEPARATE DEFENSE**

Any claim for punitive or exemplary damages against Defendant is unconstitutional in that the standards for granting and asserting punitive or exemplary damages do not prohibit other plaintiffs from seeking and recovering such damages against Defendant for the same allegations of defect in the same products, and as such constitute multiple punishments for the same alleged conduct resulting in deprivation of Defendant's property without due process of law and will result in unjustified windfalls for Plaintiff and Plaintiff's counsel, in violation of the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States and similar protections afforded by the New Jersey, Missouri, Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Vermont,

Washington, West Virginia, and Wisconsin state constitutions, and that of any other state whose law is deemed to apply in this case.

**THIRTY-SECOND SEPARATE DEFENSE**

Any claim for punitive damages against Defendant cannot be maintained because an award of punitive damages under current New Jersey, Missouri, Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Vermont, Washington, West Virginia, and Wisconsin, and any other state's law deemed to apply to this action, would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose; a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred; and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution, the due process provisions of the New Jersey, Missouri, Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Vermont, Washington, West Virginia, and Wisconsin state constitutions, and the common law and public policies of the states of New Jersey, Missouri, Alabama, Alaska,

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Vermont, Washington, West Virginia, and Wisconsin and similar protections afforded by any other state whose law is deemed to apply in this case.

**THIRTY-THIRD SEPARATE DEFENSE**

To the extent that the laws of New Jersey, Missouri, Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Vermont, Washington, West Virginia, and Wisconsin and any other state whose law is deemed to apply in this case, permit punishment to be measured by the net worth or financial status of DePuy and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious, and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of Defendant in other states, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, the state laws and constitutional provisions of New Jersey, Missouri, Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Vermont, Washington, West Virginia, and Wisconsin and similar protections afforded by any other state whose law is deemed to apply in this case.

**THIRTY-FOURTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Ind. Code Ann. §§ 34-51-3-1, *et seq*.

**THIRTY-FIFTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under New Jersey, Missouri, Alabama, Alaska, Arkansas, Arizona, Colorado, Connecticut, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Vermont, Washington, West Virginia, and Wisconsin

**THIRTY-SIXTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded the New Jersey Punitive Damages Act, N.J.S.A. §§ 2A:15-5.9, *et seq*.

**THIRTY-SEVENTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Mo. Rev. Stat. §510.265 (2010) and *Rodriguez v. Suzuki Motor Corp*., 936 S.W.2d 104, 110 (Mo. banc 1996).

**THIRTY-EIGHTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Mo. Rev. Stat. § 537.067 (2010).

**THIRTY-NINTH SEPARATE DEFENSE**

To the extent Alabama law is determined to apply to this matter, Defendant is entitled to the limitations of Ala. Code sec. 6-11-21 regarding any punitive damages

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

award in this matter.

**FORTIETH SEPARATE DEFENSE**

To the extent Alabama law is determined to apply to this matter, Defendant is entitled to all defenses and limitations available to it under the Alabama Product Liability Act, Ala. Code. sec. 6-5-500 *et seq.*

**FORTY-FIRST SEPARATE DEFENSE**

To the extent Alabama law is determined to apply in this matter, subjecting Defendant to punitive damages, or affirming an award of punitive damages against Defendant in this case, would amount to and constitute a denial of due process as afforded by the Due Process Clause of Article 1, Section 6 of the Alabama Constitution, as a deprivation of property without due process, or standards or criteria of due process, based upon the following grounds and circumstances, separately and severally assigned;

a. any award of punitive damages against Defendants under the evidence in this case would necessarily be based upon an evidentiary standard no higher or more than a standard of simple negligence, and not upon a standard of proof beyond a reasonable doubt;

b. there is a lack of reasonable standards necessary to instruct the jury on the propriety and amount of any punitive damages award, and, unless such awards are subject to predetermined limits, such awards cannot pass constitutional muster;

c. use of the Alabama Pattern Jury Instruction 11.03 in instructing the jury as to the award of punitive damages, and the amount of such an award, does not provide sufficient guidance or standards for the award or amount of punitive damages;

d. any punitive damages award would not be subject to post trial and appellate review on the basis of suitable and sufficient objective standards and criteria;

e. the power and authority imposed upon the jury under Alabama law as

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

to the amount of punitive damages awarded under the statutory cap is so relatively unfettered that there is lacking any reasonable or logical standard, uniform criteria, or guidance in the assessment of the amount of the award of punitive damages;

f. under Alabama law and procedure, there is no objective, logical, or rational relationship between the award, or the amount of the award, of punitive damages and a defendant's alleged wrongful or culpable conduct;

g. under Alabama law and procedure, there is no objective, logical, or rational relationship between the award, or the amount of the award, of punitive damages and the interest or goals of the State of Alabama referable to the imposition or allowance of punitive damages;

h. under Alabama law and procedure, there is no objective or rational criteria for the amount of the award of punitive damages as it relates or compares to the assessment of compensatory damages, or amount of compensatory damages;

i. an award of punitive damages may be assessed against Defendant for unauthorized acts of its agents or agents without any additional requirement of knowledge or fault on the part of Defendant;

j. an award of punitive damages may be assessed against Defendant vicariously as a principal without any further proof of independent, wrongful conduct or ratification by Defendants;

k. Alabama procedures, pursuant to which amounts of punitive damages are awarded, permit the imposition of different penalties for the same or similar acts;

l. under Alabama law and procedures governing the award and assessment of punitive damages, there is no objective, logical, or reasonable standard or criteria which governs the award, or the amount of the award, of punitive damages;

m. the procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of the award against Defendant;

n. the procedures pursuant to which punitive damages are awarded are

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

unconstitutionally vague;

o. the procedures pursuant to which punitive damages are awarded fail to provide a clear post trial or appellate standard of review for an award of punitive damages;

p. the procedures pursuant to which punitive damages are awarded may permit the admission of evidence relative to punitive damages in the same proceedings during which liability and compensatory damages are determined; and

q. an award of punitive damages would constitute an arbitrary and capricious taking of property of Defendant without due process of law.

**FORTY-SECOND SEPARATE DEFENSE**

To the extent Alabama law is determined to apply to this matter, any claim for punitive damages against Defendant would violate Defendant's rights under Article 1, Sections 1, 2, 6, 11, 13, 15, 27, and 35 of the Alabama Constitution.

**FORTY-THIRD SEPARATE DEFENSE**

To the extent Alabama law is determined to apply to this matter, Plaintiffs cannot recover punitive damages against Defendant because such an award, which is penal in nature, would violate Defendant's constitutional rights under the Alabama Constitution unless it is afforded the same procedural safeguards as are criminal defendants, including, but not limited to, the right to avoid self incrimination, the right to forego production and disclosure of incriminating documents, and the right to the requirement of a level of proof beyond a reasonable doubt.

**FORTY-FOURTH SEPARATE DEFENSE**

To the extent Alabama law is determined to apply to this matter, any punitive damages sought against Defendant would be in excess of comparable maximums established for criminal fines by the Alabama legislature in Ala. Code §§ 13A-5-11 and 13A-5-12, jointly and separately.

**FORTY-FIFTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Alaska

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

Stat. § 09.17.020(b).

**FORTY-SIXTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Arkansas law.

**FORTY-SEVENTH SEPARATE DEFENSE**

If Arizona law is deemed to apply, Defendant is entitled to contribution, indemnification or the application of comparative fault principles, in accordance with the Arizona Contribution Among Tortfeasors Act, A.R.S. § 12-2501 *et seq*.

**FORTY-EIGHTH SEPARATE DEFENSE**

If Arizona law is deemed to apply, Plaintiffs' claims are barred by A.R.S. §§ 12-683(1), 12-683(2), and 12-683(3).

**FORTY-NINTH SEPARATE DEFENSE**

If Colorado law is determined to apply to this matter, Plaintiffs' claims fail because any and all damages alleged in the Complaint were caused by misuse of the product for a purpose other than that which was intended and which could not reasonably have been expected, and such misuse of the product was the cause of Plaintiffs' injuries and damages, if any. C.R.S. 13-21-402.5.

**FIFTIETH SEPARATE DEFENSE**

If Colorado law is determined to apply to this matter, Plaintiffs' clams are barred in whole or in part by the doctrine of comparative fault. If other persons or entities were negligent, legally responsible, or otherwise at fault for the damages alleged in the Complaint, this percentage of fault must be reduced against any fault assessed against Defendant pursuant to C.R.S. § 13-21-111, § 13-21-111.5 and § 13-21-406. Defendant denies that it breached any duties allegedly owed to Plaintiffs.

**FIFTY-FIRST SEPARATE DEFENSE**

If Colorado law is determined to apply to this matter, any verdict or judgment rendered against Defendant is subject to the requirements of C.R.S. §13-21-111.6 and must be reduced by those amounts that have been, or will, with reasonable

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

certainty, replace or indemnify Plaintiffs, in whole or in part, for any part or future claimed economic loss, from any collateral source such as insurance, social security, worker's compensation, or employee benefit programs.

**FIFTY-SECOND SEPARATE DEFENSE**

Upon information and belief, Plaintiffs had full knowledge of the risks and possible adverse effects pertaining to the use of the subject product, as well as the risks relative to the administering of the subject product into Plaintiffs' person, and all or part of the alleged injuries, damages and/or losses, if any, sustained by Plaintiffs arose from and were caused by risks of which Plaintiffs were so aware, and such risks were accepted and assumed by Plaintiffs. For these reasons, if Colorado law is determined to apply to this matter, any recovery against Defendant should be diminished, reduced, offset, or barred in accordance with the principles of assumption of the risk and/or informed consent.

**FIFTY-THIRD SEPARATE DEFENSE**

If Colorado law is determined to apply to this matter, Plaintiffs' damages, if any, are limited by the provisions of C.R.S. § 13-21-102.5.

**FIFTY-FOURTH SEPARATE DEFENSE**

If Colorado law is determined to apply to this matter, Plaintiffs' claims are barred, in whole or in part, by the Colorado Product Liability Act, C.R.S. § 13-21-401, et seq., including the presumptions contained in C.R.S. § 13-21-403. Defendant is entitled to all defenses and presumptions established by the Colorado Product Liability Act.

**FIFTY-FIFTH SEPARATE DEFENSE**

If Colorado law is determined to apply to this matter, Plaintiffs' claims fail because the product at issue, at the time of sale by Defendant, complied with all applicable codes, standards, and/or regulations adopted or promulgated by the United States and/or Colorado, or by any agency of the United States and/or Colorado. C.R.S. § 13-21-403.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**FIFTY-SIXTH SEPARATE DEFENSE**

Defendant is entitled to the protections under Conn. Gen. Stat. §52-240(b).

**FIFTY-SEVENTH SEPARATE DEFENSE**

To the extent Florida law is determined to apply to this matter, Plaintiffs' claims are barred because the products at issue were designed, manufactured and sold in accordance with the state of the art at the time they were manufactured. Fla. Stat. sec. 768.1257.

**FIFTY-EIGHTH SEPARATE DEFENSE**

To the extent Florida law is determined to apply to this matter, Defendant is entitled to application of Fla. Stat. sec. 768.1256 because it complied with applicable federal regulations regarding the products at issue at the time of sale, and accordingly the products at issue are neither defective nor unreasonably dangerous.

**FIFTY-NINTH SEPARATE DEFENSE**

Defendant is entitled to the protections under O.C.G.A. §51-1-11(b)(1), O.C.G.A. §51-12-33, and O.C.G.A. §51-12-5.1 *et seq.*

**SIXTIETH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Iowa Code § 668A.1., *et seq*.

**SIXTY-FIRST SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Idaho Code §§ 6-1601(9) and 6-1604 (2003).

**SIXTY-SECOND SEPARATE DEFENSE**

To the extent Illinois law is determined to apply to this matter, if Defendant is found liable to Plaintiffs, Defendant claims a reduction in recovery to Plaintiffs based on amounts received from others pursuant to 740 ILCS 100/2 (2008) and other applicable law.

**SIXTY-THIRD SEPARATE DEFENSE**

To the extent Illinois law is determined to apply to this matter, as to those

damages to Plaintiffs that have been or will be replaced or indemnified, in whole or in part, from a collateral source, Defendant claims the benefit of 735 ILCS 5/2-1205 and 735 ILCS 5/2-1205.1.

**SIXTY-FOURTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Indiana law, including the Indiana Product Liability Act.

**SIXTY-FIFTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Ind. Code Ann. §§ 34-51-3-1, *et seq*.

**SIXTY-SIXTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Kansas law.

**SIXTY-SEVENTH SEPARATE DEFENSE**

To the extent Kentucky law is determined to apply to this matter, Defendant pleads and relies upon the applicable provisions and defenses of the Kentucky Product Liability Act, K.R.S. 411.300 et seq.

**SIXTY-EIGHTH SEPARATE DEFENSE**

To the extent Louisiana law is determined to govern in this matter, this case is governed by the exclusive provisions of the Louisiana Products Liability Act (La.-R.S. 9:2800 et seq.) ("LPLA"). Any theories of recovery that fall outside of the Louisiana Products Liability Act's provisions are therefore subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

**SIXTY-NINTH SEPARATE DEFENSE**

To the extent Louisiana law is determined to govern in this matter, Defendant specifically pleads the applicability and exclusivity of the Louisiana Products Liability Act (La. R.S. 9:2800, et seq.), and specifically avers that Plaintiffs are not entitled to recovery under any of the exclusive theories of products liability recovery set forth in said Act.

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**SEVENTIETH SEPARATE DEFENSE**

To the extent Louisiana law is determined to govern in this matter, Defendant specifically avers that the product at issue possessed no characteristic that rendered it unreasonably dangerous in a reasonably anticipated use as defined by the Louisiana Products Liability Act (La. R.S. 9:2800.54).

**SEVENTY-FIRST SEPARATE DEFENSE**

To the extent Louisiana law is determined to govern in this matter, Defendant assets all allowable defenses under the Louisiana Products Liability Act, La. Rev. Stat. § 9:2800.51, *et seq*., including but not limited to the applicability of La. R.S. 9:2800.59.

**SEVENTY-SECOND SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Maine law.

**SEVENTY-THIRD SEPARATE DEFENSE**

If Maryland law is determined to apply to this matter, any claim for noneconomic damages is limited by the provisions of Md. Code Ann., Cts. & Jud. Proc. §11-108.

**SEVENTY-FOURTH SEPARATE DEFENSE**

Defendant is entitled to the protections under Md. Code Ann., Cts. & Jud. Proc. §3-1401 *et seq.*

**SEVENTY-FIFTH SEPARATE DEFENSE**

Defendant is entitled to the protections under Mass Gen. Laws ch. 231B *et seq*.

**SEVENTY-SIXTH SEPARATE DEFENSE**

To the extent Michigan law applies, exemplary and/or punitive damages are expressly prohibited by Michigan law.

**SEVENTY-SEVENTH SEPARATE DEFENSE**

To the extent Michigan law applies, Defendant asserts all of the

presumptions, protections, defenses and damages limitations pursuant to the Michigan Products Liability Act, MCLA 600.2945 et seq., including specifically, but not limited to, MCLA 600.2946 through MCLA 600.6306, including MCLA 600.2946, MCLA 600.2946(a), MCLA 600.2947, MCLA 600.2948, MCLA 600.2956, MCLA 600.2957, and MCLA 600.2959.

**SEVENTY-EIGHTH SEPARATE DEFENSE**

To the extent Michigan law applies, Plaintiffs' causes of action may be barred because the product may have been misused, abused, altered, improperly maintained, suffered a substantial change and/or was used in an inappropriate manner. MCLA 600.2947.

**SEVENTY-NINTH SEPARATE DEFENSE**

To the extent Michigan law applies, Defendant places Plaintiffs on notice that it reserves the right to claim attribution of fault to a non-party pursuant to MCR 2.112(K)(3), MCLA 600.2956, 600.2957, and 600.6304.

**EIGHTIETH SEPARATE DEFENSE**

To the extent Michigan law applies, Defendant will rely upon all provisions of the Michigan Tort Reform Act, MCLA 600.6301 et seq., including but not limited to MCLA 600.6303 and 600.2946a(1), for, without limitation, any set-offs, reductions to present value, payments by collateral sources, caps on and limitations on and prohibitions of certain types of damages. In particular, Plaintiffs' claims for non-economic damages are capped pursuant to MCL 600.2946a.

**EIGHTY-FIRST SEPARATE DEFENSE**

To the extent Michigan law applies, and to the extent it is determined that Defendant is liable to Plaintiffs, which is denied, Defendant is entitled to have the jury allocate liability, as a percentage, to anyone at fault including non-parties, with this Defendant only liable for its assigned percentage of liability, if any. MCLA 600.2957(1).

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**EIGHTY-SECOND SEPARATE DEFENSE**

To the extent Michigan law applies, Plaintiffs' claims for non-economic damages are barred for the reason that Plaintiffs' percentage of comparative fault is greater that the aggregate fault of the Defendants and non-parties hereto, pursuant to MCL 600.2959 and MCL 600.6306; but that to the extent allowable, must be reduced in total or part pursuant to 600.2946(a).

**EIGHTY-THIRD SEPARATE DEFENSE**

To the extent Michigan law applies, Michigan law does not recognize or permit claims for strict liability and all strict liability claims in Plaintiffs' Complaint should be dismissed.

**EIGHTY-FOURTH SEPARATE DEFENSE**

To the extent Michigan law applies, and to the extent that DePuy's products were involved in this case, at the time they were sold, they were designed, manufactured, and labeled in accordance with knowledge reasonably available to DePuy, within industry standards and customs, within state and federal statutory requirements, and within prevailing non-government standards and regulations pertinent to the product. MCL 600.2946(4). As such, Defendant is entitled, at a minimum, to a rebuttable assumption of non-liability.

**EIGHTY-FIFTH SEPARATE DEFENSE**

That to the extent Plaintiffs proves that the products in question caused or contributed to any injuries he claims to have suffered, which is denied, Plaintiffs cannot prove that the scientific, technical, or medical information that was reasonably available at the time was known or should have been known. MCL 600.2948.

**EIGHTY-SIXTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Minn. Stat. Ann. § 549.20 *et seq*. and Minn. Stat. Ann. § 604.02, subd. 1 (West 2010).

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**EIGHTY-SEVENTH SEPARATE DEFENSE**

To the extent that Mississippi law is determined to apply to this matter, Plaintiffs' claims for breach of warranty, both expressed and/or implied, are barred by failure to give notice as required by Miss. Code Ann. § 75-2-607 (1972).

**EIGHTY-EIGHTH SEPARATE DEFENSE**

To the extent that Mississippi law is determined to apply to this matter, to the extent that Plaintiffs' claims are based upon any theory of product liability, they are barred or limited by Mississippi's Product Liability Act, Miss. Code Ann. § 11-1-63 (1972).

**EIGHTY-NINTH SEPARATE DEFENSE**

To the extent that Mississippi law is determined to apply to this matter, Defendant is entitled to a comparative apportionment of responsibility, fault or causation as to Plaintiffs', other defendants, including settling defendants, and parties pursuant to Miss. Code Ann. § 85-5-7 (1972). Further, Defendant is entitled to a credit, pro-rata reduction or percentage reduction for any amounts paid by settling defendants or third parties.

**NINETIETH SEPARATE DEFENSE**

To the extent that Mississippi law is determined to apply in this matter, an award of punitive damages, as permitted under the substantive law of the State of Mississippi, violates the due process, equal protection, and excessive fines clauses of the Constitution of the State of Mississippi, including, but not limited to, Article 3, §§ 14, 17, and 28 of the Mississippi Constitution.

**NINETY-FIRST SEPARATE DEFENSE**

To the extent that Mississippi law is determined to apply in this matter, Plaintiffs' claims for punitive damages must be limited by Defendant's relevant economic activity in the State of Mississippi.

**NINETY-SECOND SEPARATE DEFENSE**

To the extent that Mississippi law is determined to apply in this matter,

Plaintiffs' claims are barred by Miss. Code Ann. § 15-1-33 (1972), requiring that any suit for penalty be brought within one year from the date of the alleged offense.

**NINETY-THIRD SEPARATE DEFENSE**

If Montana law is determined to apply to this case, Defendant's liability, if any, is limited by the provisions of Mont. Code Ann. §25-1-703(1) *et seq*. and *Payne v. Knutson*, 2004 MT 271, 323.

**NINETY-FOURTH SEPARATE DEFENSE**

Defendant is entitled to the protections under Nev. Rev. Stat. §17.255(1) and Nev. Rev. Stat. §41.141.

**NINETY-FIFTH SEPARATE DEFENSE**

If New Hampshire law is deemed to apply in this matter, to the extent Plaintiffs are seeking punitive damages, any such claim is barred by N.H. Rev. Stat. Ann. § 507:16.

**NINETY-SIXTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under UJI 13-861 and 13-1827 NMRA.

**NINETY-SEVENTH SEPARATE DEFENSE**

Defendant is entitled to the protections under NY C.P.L.R. §§1401 and 1402.

**NINETY-EIGHTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Ohio law.

**NINETY-NINTH SEPARATE DEFENSE**

To the extent Ohio law applies to this matter, Defendant is entitled to the applicable defenses and/or presumptions available to it under the Ohio Product Liability Act.

**ONE HUNDREDTH SEPARATE DEFENSE**

To the extent Ohio law applies to this matter, Plaintiffs' claims should be dismissed to the extent that they exceed and/or conflict with the terms and

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

limitations provided by the Ohio Product Liability Act.

**ONE HUNDRED FIRST SEPARATE DEFENSE**

To the extent Ohio law applies to this matter, Plaintiffs expressly and/or impliedly assumed any risks associated with the use of the product, and accordingly Plaintiffs' claims are barred under the Ohio Product Liability Act.

**ONE HUNDRED SECOND SEPARATE DEFENSE**

To the extent Ohio law applies to this matter, to the extent Plaintiffs are seeking punitive damages, any such claim is barred by Ohio Rev. Code. Ann. sec. 2307.80.

**ONE HUNDRED THIRD SEPARATE DEFENSE**

To the extent Ohio law applies to this matter, to the extent Plaintiffs are seeking punitive damages, any such claim is barred because the product was manufactured and labeled in relevant and material respects in accordance with the terms of the approval for the product pursuant to the Federal Food, Drug, and Cosmetic Act. Ohio Rev. Code Ann. sec. 2307.80(C)(1).

**ONE HUNDRED FOURTH DEFENSE**

Defendant is entitled to the protections under Okla. Stat. tit. 12, §832.

**ONE HUNDRED FIFTH SEPARATE DEFENSE**

DePuy is entitled to the applicable protections, limitations, and presumptions afforded under Oregon law, including but not limited to Or. Rev. Stat. 30.900, *et seq*.

**ONE HUNDRED SIXTH SEPARATE DEFENSE**

Defendant is entitled to the protections under 47 Pa. Cons. Stat. Ann. § 8324 and 42 Pa. Cons. Stat. Ann. § 7102.

**ONE HUNDRED SEVENTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under R.T. Gen Laws §10-6-3.

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

**ONE HUNDRED EIGHTH SEPARATE DEFENSE**

To the extent South Carolina law applies in this matter, and to the extent Plaintiffs seek punitive damages founded on strict liability and/or breach of warranty theories, such punitive damages are forbidden as a matter of South Carolina law.

**ONE HUNDRED NINTH SEPARATE DEFENSE**

Defendant reserves the right to raise such further and additional defenses as may be available upon the facts to be developed in discovery and under other applicable substantive law.

**ONE HUNDRED TENTH SEPARATE DEFENSE**

To the extent Tennessee law is determined to apply to this matter, Defendant pleads and relies upon the applicable provisions and defenses of the Tennessee Product Liability Act of 1978, as codified in sections 29-28-101 through 108 of the Tennessee Code.

**ONE HUNDRED ELEVENTH SEPARATE DEFENSE**

If Texas law is determined to apply to this case, Plaintiffs are not entitled to any punitive damages because the imposition of such damages would violate Defendant’s rights under Texas common law.

**ONE HUNDRED TWELFTH SEPARATE DEFENSE**

If Texas law is determined to apply to this case, Defendant is entitled to the applicable exemplary damages limit or exclusion under Chapter 41.008 of the Texas Civil Practice and Remedies Code.

**ONE HUNDRED THIRTEENTH SEPARATE DEFENSE**

If Texas law is determined to apply to this case, Plaintiffs' claims fail because the labeling and design of the product at issue complied at the time of the manufacturer with all applicable federal regulations governing the product. Tex. Civ. Prac. & Rem. Code § 82.008.

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

**ONE HUNDRED FOURTEENTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded Utah Code Ann. §78B-8-203 *et seq*.

**ONE HUNDRED FIFTEENTH SEPARATE DEFENSE**

Defendant is entitled to the protections under Va. Code § 8.01-38.1.

**ONE HUNDRED SIXTEENTH SEPARATE DEFENSE**

Defendant is entitled to the protections and limitations afforded under Vermont law.

**ONE HUNDRED SEVENTEENTH SEPARATE DEFENSE**

If Washington substantive law is determined to apply, then any claim for punitive damages against Defendant cannot be maintained because punitive damages are not permitted under Washington law.

**ONE HUNDRED EIGHTEENTH SEPARATE DEFENSE**

If Washington substantive law is determined to apply, then if more than one entity, as that term is used in RCW 4.22.070, is found to be at fault, then fault should be apportioned among all at-fault entities, whether this includes Defendant, or not, and among all persons or entities that have settled with the Plaintiffs at the time of trial. Defendant hereby requests apportionment pursuant to RCW 4.22 *et seq*.

**ONE HUNDRED NINETEENTH SEPARATE DEFENSE**

If Washington substantive law is determined to apply, Defendant is entitled to all defenses and presumptions afforded to it by the Washington Product Liability Act. RCW 7.72.010 *et seq*.

**ONE HUNDRED TWENTIETH SEPARATE DEFENSE**

If Washington substantive law is determined to apply, Plaintiffs' claims are precluded to the extent they exceed the statutory definition of a product liability claim. RCW 4.72.010(4).

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**ONE HUNDRED TWENTY-FIRST SEPARATE DEFENSE**

If West Virginia law is deemed to apply, Plaintiffs' claims for punitive damages are governed by *Garnes v. Fleming Landfill, Inc.,* 413 S.E.2d (W. Va 1996).

**ONE HUNDRED TWENTY-SECOND SEPARATE DEFENSE**

If Wisconsin law is deemed to apply, Plaintiffs' breach of warranty claims are barred by *Austin v. Ford Motor Co*. (1979) 86 Wis. 2D 628, 644.

**ONE HUNDRED TWENTY-THIRD SEPARATE DEFENSE**

If Wisconsin law is determined to apply to this matter, any claim for punitive damages is limited by the provisions of Wis. Stat. §895.043(6) (2011).

**ONE HUNDRED TWENTY-FOURTH SEPARATE DEFENSE**

Defendant hereby raises, asserts, and preserves its defense of improper venue.

**ONE HUNDRED TWENTY-FIFTH SEPARATE DEFENSE**

Plaintiffs' claims are barred in whole or part because they have been filed in an inconvenient forum or *forum non conveniens*.

**ONE HUNDRED TWENTY-SIXTH SEPARATE DEFENSE**

The Plaintiffs in this matter have been improperly joined in this lawsuit, and do not satisfy the requirements of Fed. R. Civ. P. 20.

**ONE HUNDRED TWENTY-SEVENTH SEPARATE DEFENSE**

Any negligent conduct of Defendant, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of the injuries alleged in the Complaint.

**ONE HUNDRED TWENTY-EIGHTH SEPARATE DEFENSE**

Defendant reserves the right to raise such further and additional defenses as may be available upon the facts to be developed in discovery and under other applicable substantive law.

/ / /

/ / /

**PRAYER**

WHEREFORE, Defendant Johnson & Johnson respectfully prays as follows:

1. That Plaintiffs take nothing by reason of the Complaint;
2. That the Complaint be dismissed in its entirety;
3. That Defendant recover its reasonable costs of suit incurred in defense of this action; and
4. For such other relief as the Court deems just and proper.

DATED: November 29, 2012 YUKEVICH CALFO & CAVANAUGH

By: */s/ Alexander G. Calfo*
Alexander G. Calfo
Kelley S. Olah
Gabrielle Anderson-Thompson
Attorneys for Defendants JOHNSON & JOHNSON, JANSSEN RESEARCH & DEVELOPMENT, LLC (formerly known as Johnson & Johnson Pharmaceutical Research & Development, LLC), and JANSSEN PHARMACEUTICALS, INC. (formerly known as and Ortho-McNeil Pharmaceutical, Inc.)

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone (213) 362-7777
Facsimile (213) 362-7788

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Fifteenth Floor, Los Angeles, California 90071-1560.

On November 29, 2012, I served true copies of the following document(s) described as **DEFENDANT JOHNSON & JOHNSON'S ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES** on the interested parties in this action as follows:

| | |
|---|---|
| Daniel .V. Santiago<br>Law Offices of Daniel V. Santiago, P.C.<br>KPMG Tower<br>355 South Grand Avenue, Ste 2450<br>Los Angeles, CA 90071 | Attorneys for Plaintiffs<br><br>T: 866-306-9527<br>F: 866-3.06-9528<br><br>Email: dvs@dvslawoffices.com |

**BY CM/ECF** for parties that are CM/ECF participants. Service is being made electronically on those parties on the attached list that are registered users of the Court's Electronic Case Filing System.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 29, 2012, at Los Angeles, California.

*/s/Kerry Powers*
Kerry Powers